Rothrock v. Perkinson.

———————◆———————

## ROTHROCK v. PERKINSON.

| 61  | 39 |
| 144 | 89 |

LOTTERY.—*Contract in aid of Void.—Gaming.*—Every scheme for the division or disposition of money or other property by chance, or any game of hazard, is prohibited in this State by law, and every contract in aid thereof is against public policy and therefore void.

SAME.—*Contract Relating to Prize Made After the Drawing.*—A contract by the holder of a ticket in such a scheme, with one having no connection with the original purchase of such ticket, made *after* the rights of such holder have been determined, whereby, for a valuable consideration, he disposes of any specified part of the money or property which he may have gained by means of such scheme, is valid.

SAME.—*Open and Close.—Pleading.*—Where the answer to a complaint neither expressly denies, nor confesses and avoids, the allegations of the complaint, and amounts only to an argumentative denial thereof, the plaintiff is entitled to the open and close.

EVIDENCE.—*Statutes of Foreign State.*—A volume purporting on its title page to be the statutes of another State " Published by Authority," is admissible in evidence in this State without further proof of its authenticity.

SAME.—*Harmless Error.*—The admission of immaterial evidence which works no harm to either party is harmless error.

From the Shelby Circuit Court.

*R. Hill* and *E. M. Richardson*, for appellant.
*W. W. Herod* and *F. Winter*, for appellee.

NIBLACK, J.—This was an action commenced in the
Bartholomew Circuit Court, by James W. Perkinson,
against Henry A. Rothrock and the First National Bank
of Columbus, for the recovery of seven hundred and fifty
dollars, and afterward transferred to the court below on a
change of venue.

The complaint was in three paragraphs.

Before an answer was filed, the bank brought the
money demanded into court, to be paid to the party
which should ultimately be found entitled to it.

Thereupon the first and second paragraphs of the
complaint were stricken out, and the action dismissed as
to the bank.

The remaining paragraph was as follows:

"The plaintiff, further complaining of said defendant,
says, that heretofore, to wit, on the — day of ——, 1872,
the General Assembly of the State of Kentucky, by an
act entitled 'An act to incorporate the Public Library of
Kentucky,' approved March 16th, 1871, authorized and em-
powered a certain corporate body of said State, known as
the Public Library of Kentucky, to distribute by chance
or lot, by tickets sold for the purpose, certain sums of
money and property for the purpose of founding a public
library in the city of Louisville, in said State; that said
Library Association, in pursuance of the authority of said
act, thereupon arranged a certain scheme for the distribu-
tion, at said city of Louisville, of various sums of money
by chance, to the purchasers of tickets in said scheme, and
exposed for sale in said city of Louisville tickets in said
scheme; that defendant Henry A. Rothrock, in company
with others, purchased at said city of Louisville a cer-
tain ticket in said scheme; that, upon the drawing of
said scheme, which was had and held at said city of
Louisville, in said State of Kentucky, on the — day of
December, 1872, the holders of said ticket, including said

Rothrock, drew and became entitled to demand and receive, according to the terms of said ticket and scheme, from said Library Association, the sum of seventy-five thousand dollars, of which said sum said Henry A. Rothrock was entitled to demand and receive the sum of seven thousand five hundred dollars; that, after the drawing of said sum of money as aforesaid, to wit, on the — day of December, 1872, said Henry A. Rothrock, for a valuable consideration then paid to him by plaintiff, sold, assigned and transferred to plaintiff one-tenth part of said sum of seven thousand five hundred dollars, and undertook and agreed that said part thereof, to wit, seven hundred and fifty dollars, should be paid over to plaintiff if the same should be paid over by or collected from said Library Association.    Thereafter, to wit, on the — day of December, 1872, said Library Association paid over to the First National Bank of Columbus, Indiana, at said city of Louisville, for the persons entitled to receive the same, said sum of seventy-five thousand dollars, and plaintiff thereupon became entitled to receive from said bank said sum of seven hundred and fifty dollars. Plaintiff immediately notified said bank of his ownership of said money and demanded of it to pay the same to him, but said Rothrock, unmindful of his said contract, and in violation thereof, notified said bank not to pay said money to plaintiff, and demanded that it should pay the same to him.   Whereupon said bank refused, and still refuses, to pay said money or any part thereof to plaintiff, and converted the same to the use of itself and said Rothrock.

"Plaintiff avers, that said Rothrock still claims said money and refuses to permit plaintiff to receive the same, and plaintiff makes him a party hereto, and demands a full determination of all said matters, and thereupon judgment for seven hundred and fifty dollars."

A demurrer to this paragraph, for want of sufficient

facts, was overruled, to which an exception was reserved.

Rothrock then answered as follows:

"1st. The defendant Henry A. Rothrock, for answer to the plaintiff's complaint says, that heretofore, to wit, on the 7th day of December, 1872, this defendant was joint owner, with nine others, of a ticket, to wit, ticket No. 6450, in a certain lottery scheme for the division of property, to wit, money, currency, bank notes, treasury notes of the United States, and other property to be determined by chance, organized and to be drawn in the city of Louisville and State of Kentucky, by an organization known as the Public Library of Kentucky, it being the same lottery named in the plaintiff's complaint, the interest of defendant therein being one-tenth part of any sum which said ticket might draw in said lottery; that, about noon of said 7th day of December, plaintiff informed defendant that a rumor prevailed in the city of Columbus, in said State of Indiana, where plaintiff and defendant then resided, and was that the ticket in which the defendant had an interest as aforesaid, to wit, said ticket No. 6450, had drawn, at a drawing that day held in the city of Louisville aforesaid, a prize in said lottery of seventy-five thousand dollars, but that the plaintiff had no knowledge or information whether such rumors were well founded or not, and that he did not believe that the same were true, and plaintiff then and there proposed to purchase from the defendant one-tenth part of the defendant's interest in said ticket, and to pay defendant therefor the sum of twenty-five dollars, at the same time assuring the defendant that he had no knowledge or information other than the mere rumor of which he had before informed the defendant as to whether said ticket had drawn any prize whatever or not, and relying upon said representations of plaintiff, and believing them to be true and having no knowledge whatever whether said ticket had or had not drawn any prize, defendant sold and

transferred to plaintiff one-tenth part of defendant's interest in said ticket for the sum of twenty-five dollars, which plaintiff then and there paid the defendant. Defendant says, that said representations to him were false and fraudulent in this, to wit, that, at the time plaintiff so represented to defendant that he had no knowledge or information in regard to the drawing of said prize by said ticket other than the said rumor, plaintiff had himself seen a telegraphic dispatch from the city of Louisville aforesaid, stating, in substance, that said ticket had drawn a prize of seventy-five thousand dollars, which dispatch was from a reliable source, and was true in fact, and also that plaintiff was informed by a reliable and trustworthy citizen of Columbus aforesaid, that a telegram had been sent from the place where the drawing was taking place at Louisville aforesaid, to certain citizens of Columbus aforesaid, to the effect that said ticket No. 6450 had drawn the capital prize in said lottery, to wit, seventy-five thousand dollars, which was true in fact.

" All which facts plaintiff then and there concealed from this defendant, and of which this defendant had no knowledge.

" Defendant further says, that immediately upon learning the fact that said ticket had drawn said prize, and that plaintiff had practised upon him the deception aforesaid, he notified plaintiff that he rescinded said contract on account of said fraud, and then and there tendered him said twenty-five dollars, so by him paid to this defendant, which sum plaintiff refused to accept, and which defendant now here brings into court.

" He further says, that the said transaction is the same as that mentioned in plaintiff's complaint, and not other or different. Wherefore he says plaintiff ought not to maintain said action.

" 2d. For further answer to said complaint, defendant says, that heretofore, to wit, on the 7th day of December, 1872, defendant was the owner of one-tenth interest.

in a certain lóttery ticket, to wit, ticket No. 6450, in a certain lottery scheme for the division of property, to wit, money, currency, bank notes, treasury notes of the United States, and other property, to be determined by chance, organized and to be drawn in the city of Louisville, and State of Kentucky, by an organization known as the Public Library of Kentucky, that the drawing of said lottery took place, to wit, on the said 7th day of December, 1872, to wit, at the hour of ten o'clock in the forenoon of said day, at Louisville aforesaid; that thereafter, to wit, about noon of said day, and without any knowledge in fact, that said drawing had taken place, or whether said ticket had or had not drawn any prize at said drawing, and before any part of said prize had been paid over to defendant, and while the same was still held by said lottery company, to wit, said Public Library, plaintiff, at the city of Columbus, in the State of Indiana, where he and defendant resided and then were, purchased from defendant, for the sum of twenty-five dollars, one-tenth part of said interest of defendant in said ticket, which is the same transaction set forth in plaintiff's complaint, and no other or different.

"Said defendant further says, that he did not receive any part of the sum of money so drawn as aforesaid by said lottery ticket until, to wit, on the 10th day of December, 1872, but the same remained until said last mentioned day in the hands of said Public Library Association, the same as before said drawing had taken place. Wherefore defendant says, that said contract sought by the plaintiff to be enforced in this action is illegal and void, and plaintiff ought not to recover."

A demurrer to each paragraph of the answer was overruled, and there was a reply in general denial.

A trial by a jury resulted in a verdict for the plaintiff, and, over a motion for a new trial, there was judgment on the verdict.

The first error assigned is upon the overruling of the· demurrer to the complaint.

The appellant contends, that the facts stated in the complaint show, that the alleged sale by him to the appellee of an interest in the money drawn on his lottery ticket was in violation of the spirit, if not the letter, of the act prohibiting the sale of lottery tickets, and was, in consequence, illegal and void.

That act reads as follows:

"If any person shall sell a lottery ticket or tickets, or share in any lottery scheme or gift enterprise, or act as· agent for any lottery scheme or gift enterprise, or aid or· abet any person or persons to engage in the same, or shall transmit money by mail or express, or otherwise transmit the same to any lottery scheme or gift enterprise for the· division of property, to be determined by chance, or shall make or draw any lottery scheme or gift enterprise for a division of property not authorized by law, such person, on conviction, shall be fined in any sum not exceeding five hundred dollars," (2 R. S. 1876, p. 470, sec. 32,) and. is evidently intended to enforce that provision of our· Constitution (section 8, article 15) which declares, that. "No lottery shall be authorized; nor shall the sale of lottery tickets be allowed."

It is well settled in this State that every scheme for the division or disposition of property or money by chance,. or any game of hazard, is prohibited by law, and that every contract or agreement in aid of such a scheme is· void as against public policy. *Swain* v. *Bussell*, 10 Ind. 438; *Riggs* v. *Adams*, 12 Ind. 199; *Higgins* v. *Miner*, 13 Ind. 346; *Thatcher* v. *Morris*, 11 N. Y. 437.

If, therefore, the complaint was obnoxious to the objection urged against it by the appellant, the demurrer to it ought to have been sustained.

But what are the substantial averments of the complaint, in regard to the alleged sale of the appellant's interest in the money in dispute? Simply that the appel-

lant, in company with others, purchased a ticket in a lottery scheme, and drew on his interest in such ticket the sum of seven thousand five hundred dollars in money, and that, on a certain day in December, 1872, *after* the drawing of said sum of money, he, the appellant. for a valuable consideration then paid to him, sold, assigned and transferred to the appellee one-tenth part of said sum of seven thousand five hundred dollars, and undertook and agreed that said tenth part thereof, to wit, the sum of seven hundred and fifty dollars, shoul 1 be paid over to the appellee if the same should be collected from the Library Association which promoted such lottery scheme; also, that the Library Association did pay over the money, but the appellant refused to perform his undertaking and agreement.

It appears to us clear, from these averments, that, so far as the appellant was concerned, all the elements of chance which constitute the essence of a lottery had been eliminated from the scheme, and that the money drawn had become a prize merely, subject to the appellant's order, before the appellee purchased an interest in the money.

The possession, control or ownership of the ticket seems not to have entered into the negotiation at all, nor does it appear, even inferentially, that the appellee had any connection with the purchase or sale of the ticket in the first instance, or with any of the chances which entered into the drawing upon it.

In *Thornburg* v. *Harris*, 3 Cold. 157, citing Story on Conflict of Laws, secs. 248, 249, it is said :

" The principle of illegal contracts is, after the illegal act is done, if the new contract is wholly unconnected with the illegal act, and is founded on a new consideration, and is not a part of the original scheme, although it may be known to the party with whom the contract is made, it will make no difference that such new and independent contracts are made with the person who is the con-

tractor or conductor of the original illegal act, if it is wholly disconnected therefrom; for a new contract, founded on a new consideration, although in relation to property, in respect to which there has been prior unlawful transactions between the parties, is not, in itself, unlawful."

In Story Sales, sec. 506, it is also said:

" The test, whether a demand connected with an illegal transaction is capable of being enforced at law, is to be found in the question, whether the contract, on which the claim is founded, can be wholly disconnected from the illegal transaction, or whether it was in furtherance thereof."

In Story Contracts, sec. 760, it is further said:

" So, also, if an act in violation of either statute or common law be already committed, and a subsequent agreement entered into, which, though founded thereupon, constituted no part of the original inducement or consideration of the illegal act, such an agreement is valid. If, therefore, goods, which have been smuggled, be sold to a third person, he knowing the fact, yet, unless the sale be in pursuance of an original agreement, entered into before the smuggling, and forming an inducement thereto, the vendee will be liable for the price."

These authorities go strongly to sustain the sufficiency of the complaint, and, regarding them as applicable in principle to the case at bar, we are of the opinion that the demurrer was properly overruled.

Error is also assigned upon the overruling of the appellant's motion for a new trial.

All the other errors assigned only constituted causes for a new trial, and as such we are only required to consider them. *Shore* v. *Taylor*, 46 Ind. 345; *Reinhart* v. *The State*, 45 Ind. 147; *Leffler* v. *Rice*, 44 Ind. 103; *Ramsey* v. *Randall*, 43 Ind. 549; *Crowfoot* v. *Zink*, 30 Ind. 446; Buskirk Prac. 126.

After the issues were joined, and when the cause was

called for trial, the appellant moved the court for leave to open and close the case, but that motion was overruled, to which an exception was reserved.

Neither paragraph of the answer either expressly admitted or denied any of the material allegations in the complaint. Nor did both of them confess and avoid such material allegations. Both paragraphs, however, did set up matters inconsistent with material portions of the complaint, which operated as an argumentative denial of the complaint to that extent. Under the issues, as thus presented, we think the court did not err in refusing to permit the appellant to open and close the case on the trial. The B. & O. R. R. Co. v. McWhinney, 36 Ind. 436; Fetters v. The Muncie National Bank, 34 Ind. 251.

On the trial, the appellee, to prove that the Public Library of Kentucky was a duly incorporated institution, as alleged in the complaint, offered in evidence a bound volume entitled " Acts of the General Assembly of the Commonwealth of Kentucky, passed at the adjourned session, (January, 1871,) of the General Assembly, which was begun and held in the city of Frankfort, on Monday, the 6th day of December, 1869, Published by authority," which contained what purported to be an act incorporating such Public Library.

The appellant objected to the introduction of this book, because it did not sufficiently appear that it was published by the authority of the State of Kentucky.

The objection, however, was overruled, and the book admitted in evidence.

We can not hold, that the evidence was material under the issues in the cause, but we are of the opinion, that, at all events, its admission was not erroneous, as the fair and reasonable inference from the title page was that the volume purported to be, and was, published by the authority of the State of Kentucky. Cutler v. Wright, 22 N. Y. 472; Crake v. Crake, 18 Ind. 156; Comparet v. Jernegan, 5 Blackf. 375; 2 R. S. 1876, p. 148, sec. 278.

On the trial, the appellant prayed the court to give the following instructions to the jury:

"1st. If you believe from the evidence, that the defendant was the holder of an interest in a lottery ticket in any lottery scheme, or scheme for the division of property, or drawing or division of money to be determined by chance, and that plaintiff contracted with defendant in the State of Indiana, that defendant should and did sell to plaintiff a portion of his interest in such lottery ticket, such a contract would be illegal and void; and, if you find that this action is based upon such a contract, you should find for the defendant.

"2d. If you believe from the evidence, that the defendant was the holder or owner of an interest in a lottery ticket in any lottery scheme, or scheme for drawing or division of money or property to be determined by chance, and that defendant contracted with plaintiff, within the State of Indiana, to sell to him, and plaintiff contracted to purchase, a portion of defendant's interest in such lottery ticket, and that at the time of such contract the drawing of such lottery or scheme had actually taken place, but the money or property drawn by such ticket had not been actually paid over to the holder thereof or his agent, such contract for the purchase of such ticket, or of an interest therein, would still be illegal and void, and you should find for the defendant.

"3d. It makes no difference as to the legality of the contract for the purchase and sale of a lottery ticket, that the ticket was issued by a company or body of persons outside of the State of Indiana, who were authorized by the law of the State in which it was issued to issue such ticket, if the issuing and sale thereof were not authorized by the laws of the State of Indiana at the time the contract for the sale of an interest therein took place within said State of Indiana, if you shall find from the evidence that such contract did take place within said State, as

Rothrock *v.* Perkinson.

neither the laws of Kentucky nor any other State, upon a subject of this character, can have any force within the territorial limits of the State of Indiana, where such contracts are prohibited.

" 4th. The law will not give its aid to either party to an illegal contract, but will leave them in the condition in which it finds them. It will not enforce the contract if it be executory, and when the parties have carried out their unlawful purpose, and the illegal act has been fully accomplished, neither party can have any remedy against the other, to be restored to his former condition; and hence, if you find from the evidence that the contract upon which this action is founded was in regard to a matter or transaction prohibited by law, not only is the plaintiff not entitled to enforce such contract to the extent of receiving the money drawn by the ticket which he contracted with the defendant to receive, but he can not even receive back the money which he paid therefor.

" 5th. The sale of any lottery ticket, or share in any lottery scheme or gift enterprise for the division of property to be determined by chance, in the State of Indiana, is prohibited both by the constitution and laws of the State of Indiana, and any contract for the sale of any such ticket or share, or of any portion thereof or interest therein, is absolutely void, and no action can be maintained in the courts of this State to enforce such contract."

The court refused to give each and all of these instructions, but, of its own motion, gave the following :

" 3. It is made illegal by statute law, for any person within the State of Indiana, ' to sell a lottery ticket, or tickets, or share in any lottery scheme or gift enterprise ; ' and any contract, therefore, of the sale or purchase of any lottery ticket, or any part or interest in any lottery ticket, if made within this State, would be void, and could not be enforced in the courts of this State.

" 4. If then you find from the evidence in this case, that the defendant was the holder of an interest in a lot-

tery ticket in any lottery scheme, or scheme for the dis-
tribution of property, and that the contract made by and
between the plaintiff and the defendant was for an inter-
est in said ticket; that is, that the plaintiff purchased of
the defendant a share, the one-tenth or otherwise, in a
lottery ticket, then you must find for the defendant, for,
no matter how much the plaintiff may have paid for the
ticket, or any share in it, or how much in earnest the par-
ties may have been in the making of the contract, yet, it
being unlawful for the defendant to sell his ticket, or any
interest therein, such contract would be void, and no
right can arise against a party who fails to keep his
promise in relation thereto. If, therefore, you are satis-
fied that the subject-matter of the contract was an inter-
est in a lottery ticket, you must find for the defendant.

"But the plaintiff avers and claims, that the defendant
was the owner of an interest in a certain lottery ticket,
and that, after the drawing had come off, and after the
ticket had drawn a prize, the plaintiff purchased of the
defendant the one-tenth of the defendant's interest in
said prize. Now, while it is unlawful to sell a lottery
ticket, and while a contract for the sale or purchase of
lottery tickets can not be upheld, yet a prize, when drawn
by a ticket, may be, and is, a legitimate article of trade;
and therefore, if you find that the subject-matter of the
contract made between the parties was an interest in the
prize drawn, you will find for the plaintiff, unless it fur-
ther appears by a preponderance of evidence that the
defendant entered into the contract in ignorance of facts
which were known to the plaintiff, and which he (plain-
tiff) was under a legal obligation to disclose to the de-
fendant, and which defendant had not equal means of
knowing, and that the facts so concealed were so mate-
rial that, if known to the defendant, he would not have
entered into the contract."

It is not necessary that we shall consider in detail the le-
gal propositions involved in each of the foregoing instruc-

tions prayed for by the appellant further than we have already done while passing upon the sufficiency of the complaint.

It is sufficient to say, that we regard instructions Nos. 3 and 4, given by the court of its own motion, as containing a fair synopsis of all of those instructions which were applicable to the issues in the cause. We can not, therefore see that the appellant was injured in any respect by the refusal of the court to give the instructions asked for by him.

The appellant complains, that instruction No. 5, above set out, as given by the court of its own motion, was erroneous, because it recognizes a prize, after it has been drawn in a lottery, as a legitimate subject of trade.

He also complains of instruction No. 6, also given by the court of its own motion, for the same reason. As but a single point is raised on this last named instruction we do not deem it necessary to set it out at length here.

As our rulings on the complaint also sustain the doctrine of instructions Nos. 5 and 6, on the point complained of, it necessarily follows that we can not hold them erroneous for the reasons assigned by the appellant.

We see no sufficient reason for reversing the judgment.

The judgment is affirmed, at the costs of the appellant.

Opinion filed at November term, 1877.
Petition for a rehearing overruled at May term, 1878.