Powers v. State.

◆

10,652.

## POWERS v. STATE.

| 87 | 144 |
|----|-----|
| 125 | 41 |
| 87 | 144 |
| 134 | 324 |
| 87 | 144 |
| 137 | 636 |
| 87 | 144 |
| 140 | 301 |
| 141 | 557 |
| 87 | 144 |
| 145 | 237 |
| 145 | 566 |
| 147 | 10 |
| 147 | 56 |
| 147 | 223 |
| 147 | 382 |
| 87 | 144 |
| 149 | 688 |
| 150 | 85 |
| 87 | 144 |
| 153 | 438 |
| 87 | 144 |
| 156 | 249 |
| 87 | 144 |
| 157 | 539 |

CRIMINAL LAW.—*Record of Empanelling Grand Jury.*—Where the record shows that the grand jury returned the indictment into open court, and the indictment itself states that the grand jury was duly empanelled, sworn and charged, the empanelling of the grand jury is sufficiently shown.

SAME.—*Change of Venue.*—*Transcript.*—When the venue is changed to another county, it is not necessary that the indictment should be copied at length into the transcript of the proceedings sent to the other county.

SAME.—*Filing Papers.*—Papers are filed in the clerk's office when delivered to the clerk for that purpose, and his endorsement of the fact is merely evidence of it.

SAME.—*Grand Juror's Qualifications.*—*Statute Construed.*—Section 2216, R. S. 1881, does not require that the grand jurors returning an indictment for a crime committed before the act of 1881 took effect shall have the qualifications required by the law in force at the date of the offence.

SAME.—*Evidence.*—The erroneous admission of evidence which could only benefit the defendant can not avail him in the Supreme Court.

SAME.—*Admission.*—*Witness.*—*Affidavit for Continuance.*—On a former trial the prosecution, to avoid a continuance, admitted the truth of certain facts contained in an affidavit filed for that purpose, as being capable of proof by an absent witness. At the next trial the witness was dead. *Held,* that the affidavit was not admissible in evidence for the defendant.

SAME.—*Declarations.*—*Murder.*—The declarations of the deceased, made after the injury which produced death, and not dying declarations, are not evidence for the defendant, on an indictment for murder.

NEW TRIAL.—*Bill of Exceptions.*—A bill of exceptions is necessary to show the truth of facts assigned as causes for a new trial, the statement of

them in the motion, or in affidavits made part of the motion, not being sufficient.

BRIEFS.—*Practice in Supreme Court.— Instructions.*—A brief or argument which points out no specific objection to instructions given to the jury, but asserts generally that they did not properly inform the jury of the law of the case, and that they did not enlighten, but tended to mislead, is not sufficient, and the Supreme Court will not consider the instructions criticised.

INSTRUCTIONS.— *Practice.*—Exceptions to instructions given present no question in the Supreme Court as to a failure to give others not requested; but if any are omitted which ought to be given there should be a request for them, and, if refused, an exception to the refusal.

SAME.—*Evidence.*—Where the record does not contain the evidence, an instruction correctly stating abstract legal propositions will be deemed applicable to the case.

MURDER.—*Manslaughter.*—On an indictment for murder in the first degree, there may be a conviction for manslaughter though the killing was not voluntary.

SAME.—*Instructions.*—*Jury.*—An instruction in a criminal case, that it is the duty of the court to instruct as to the law, but the jury are not bound by such instructions, is not erroneous.

From the Hamilton Circuit Court.

*W. R. Myers, D. W. Wood, D. Moss, R. R. Stephenson, W. R. Pierse* and *C. B. Gerard,* for appellant.

*F. T. Hord,* Attorney General, and *W. A. Kittinger,* Prosecuting Attorney, for the State.

ZOLLARS, J.—Appellant was indicted and tried on a charge of murder in the first degree; was found guilty of manslaughter, and sentenced to seven years imprisonment in the State's prison. The case was tried in the Hamilton Circuit Court, on a change of venue from Madison county. After verdict, and a motion for a new trial overruled, appellant filed a motion to be discharged from imprisonment, for the reason that the Hamilton Circuit Court did not have jurisdiction of the person of the defendant, nor of the crime or offence charged against him. This motion was overruled and appellant excepted. After the overruling of this motion he filed a motion to arrest the judgment, upon the grounds of the insufficiency

of the indictment, want of jurisdiction of the court, and for the further reason that it does not appear that the grand jury that found the indictment had legal authority to enquire into the offence charged.   This motion was overruled, and he excepted. These rulings are assigned as the third and fourth errors, and are the first in order discussed by his counsel.   Under these assignments counsel urge a number of objections, which may be stated as follows:

1st.   The transcript of the proceedings in the Madison Circuit Court, deposited in the clerk's office in Hamilton county, "does not show that a grand jury had ever been empanelled in the Madison Circuit Court."

2d.  The said transcript contained no copy of the indictment.

3d.  The said transcript was never filed in the Hamilton Circuit Court.

4th.  In said transcript there was not a sufficient certificate of the identity of the original indictment, as an original paper in the cause.

5th.  "It does not appear that the paper claimed or certified by the clerk of Hamilton county, in the record, was ever filed in the Hamilton Circuit Court."

We will examine these objections in the order stated above.

1st.  As to this, we think counsel are mistaken.   It is recited in the transcript that on the 11th day of the October term, 1881, of the Madison Circuit Court, " The grand jury are now brought into court, and, being severally called, all answered to their names, and they now file and return into court the following numbered indictments.   * * * * * 82, * * * * endorsed by * * * the foreman."   The statement in the indictment is:   " The grand jury within and for the county of Madison and State of Indiana, duly and legally empanelled, charged and sworn to enquire into all felonies," etc.   With the presumptions that are indulged in favor of the regularity of legal proceedings, the foregoing sufficiently shows that the indictment was found and returned by a legal and duly qualified grand jury.   Indeed, the exact question

involved has been directly passed upon in a very elaborate decision by this court, and decided adversely to the position of counsel. *Bailey* v. *State*, 39 Ind. 438; *Alley* v. *State*, 32 Ind. 476. See, also, *Holloway* v. *State*, 53 Ind. 554; *Long* v. *State*, 46 Ind. 582; *Bell* v. *State*, 42 Ind. 335.

2d. It is insisted that in the transcript of the proceedings in the Madison Circuit Court the indictment should have been copied at length, in order that the Hamilton Circuit Court might have jurisdiction. We do not think so. The statute requires that after a change of venue is granted from the county the clerk must make a transcript of the proceedings and orders of the court, and having sealed up the same, with the *original papers*, deliver them to the sheriff, who must deposit them in the clerk's office of the county to which the change may have been granted. R. S. 1881, section 1771. It has been held a number of times by this court that the trial must be had upon the original indictment, and hence it must accompany the transcript. No harm could be done by copying it at length into the transcript, but this is not required by the statute. *Leslie* v. *State*, 83 Ind. 180; *Duncan* v. *State*, 84 Ind. 204.

The transcript required by the statute is a transcript of the proceedings as contained in the order-books. Such a transcript, properly certified, together with the original papers, must be deposited in the clerk's office of the county to which the change may be ordered. It will be found upon examination that this is all that is required in the case of *Fawcett* v. *State*, 71 Ind. 590, and the other cases cited by appellant.

3d, 4th and 5th. These objections may properly be considered together. After setting out the title of the cause, the record states that, "on the 9th day of July, 1882, the sheriff of Madison county, Indiana, delivered to the clerk of the Hamilton Circuit Court, the following transcript and indictment in the above entitled cause, to wit:"

Following this is a certified transcript of the proceedings in the Madison Circuit Court, including the return of the in-

dictment, the filing of an affidavit by appellant for a change of venue, the granting of the same, with an order to the clerk to make a transcript of the proceedings, and transmit the same, together with the original papers, to the clerk of the Hamilton Circuit Court. The clerk of the Madison Circuit Court, in his certificate to the transcript, states, that it is a complete copy of the record in the cause, and that the papers accompanying the same are all of the original papers filed in the cause. In the record in this court, the clerk of the Hamilton Circuit Court, before setting out the indictment, states, "And said indictment, delivered to said clerk of the Hamilton Circuit Court, is in the words and figures as follows, to wit." To this indictment, so set out, the appellant filed his plea in abatement, and afterwards pleaded not guilty. We think the record shows that the transcript and indictment were properly filed in the clerk's office of Hamilton county, and that the indictment is properly identified as the original indictment. The statute requires that the transcript and the original papers, after having been sealed in a wrapper or envelope, shall be delivered to the sheriff of the county, who shall deposit them in the clerk's office of the county to which the change has been ordered. R. S. 1881, section 1771. Careful practice would require that the clerk receiving the papers should endorse upon them the date of the filing; but such endorsement is not the filing, it is simply evidence of such filing. A paper is filed when it is delivered to the proper officer, and by him received to be kept on file. *Peterson* v. *Taylor*, 15 Ga. 483. It may be said, too, that the record being silent, it will be presumed that the clerk of the Hamilton Circuit Court did his whole duty, and endorsed upon the transcript and papers the date of the filing.

Before entering his plea of not guilty in the Hamilton Circuit Court appellant filed a plea in abatement. To this plea the court sustained a demurrer. Appellant excepted, and has assigned the ruling for error. The question raised by this plea upon which appellant relies for reversal is the disqualifica-

tion of one of the grand jurors. The plea states that the crime charged was committed on the 9th day of July, 1881, that the indictment was returned on the 21st day of October, 1881, and that one of the grand jurors was not a *freeholder.* It is contended that as the crime was committed before the act of 1881, defining crimes, went into force, the qualifications of the grand jurors must be determined by the laws in force when the crime was committed, although the indictment was found and returned after the act of 1881 became the law. In this we think counsel are in error. The repealing clause in the act of 1881 saves prosecutions pending or offences committed under former laws, and provides that such prosecutions and offences shall be continued and prosecuted to a final determination, as if the act had not been passed. R. S. 1881, sec. 2216. This does not require that the qualifications of the grand jurors, who may have returned the indictment after the laws of 1881 went into effect, shall be determined by the laws in force when the crime may have been committed. *McCalment* v. *State,* 77 Ind. 250.

The act of 1881, fixing the qualifications of grand jurors, however, was in force from and after the 15th day of April, 1881. Acts 1881, p. 557; R. S. 1881, section 1385, *et seq.* This act is different from the act of 1875. 2 R. S. 1876, p. 417. Under the later act the requirement is that the grand juror shall be either a freeholder or householder. In the case under consideration, the record being silent upon the subject, it will be presumed that the grand juror named in the plea was a householder, and hence had the necessary qualifications. It follows, therefore, that there was no error in sustaining the demurrer to the plea in abatement.

The first error assigned, but last discussed by counsel for appellant, is the overruling of the motion for a new trial. Upon the trial, before appellant had stated his defence to the jury, or offered any evidence, the court, over his objection, allowed the State to prove that upon his preliminary examination, in August, 1881, before a justice of the peace, appellant, under

oath, testified that he did not throw the stone that struck William Hougham, the deceased, and did not know who did throw it. Counsel maintain that in the admission of this testimony the court committed an error. The indictment charges the killing of said Hougham, and, in different counts, charged that it was done with a stone. In one, at least, the charge is that appellant threw the stone that produced the death of said Hougham. The evidence is not in the record, except such portions as were objected to. From the record before us we are unable to understand how the evidence under consideration could have worked injury to appellant. If it proved or tended to prove anything, it was the innocence of appellant. He got the benefit of his declarations in his favor, without undergoing the ordeal of a cross-examination. There is no error in the admission of this testimony, which would justify a reversal of the judgment. R. S. 1881, sec. 1891; *Binns* v. *State*, 66 Ind. 428; *Rothrock* v. *Perkinson*, 61 Ind. 39.

The fourth reason for a new trial argued by counsel is the alleged error of the court in not allowing appellant to read in evidence an affidavit to impeach the State's witness, Moore. This witness testified that he was within four feet of appellant when he threw the stone. Upon cross-examination appellant asked the witness, "Did you not state to Lewis Hayes, on the 6th of August, 1881, * * * 'William Hougham is going to die, and if I stay here they will send me to the penitentiary for hitting Hougham on the head with a rock. I am going to leave the country?'" To this the witness answered, "I never had any such conversation with Hayes." Appellant then, for the purpose of impeaching the witness, offered in evidence his own affidavit, used upon a former trial of the cause in Madison county. This was an affidavit made on the 4th day of November, 1881, and filed in the Madison Circuit Court, for the purpose of procuring a continuance, on account of the absence of a witness, Lewis Hayes. In this affidavit appellant stated that he could prove by said Hayes that in a conversation on the 6th day of August, 1881, the witness

Moore stated to said Hayes as follows: "Bill Hougham is going to die, and if I stay here they will send me to the penitentiary for hitting Hougham on the head with a rock. I am going to leave the country." For the purpose of avoiding a continuance the attorneys for the State in the Madison Circuit Court admitted, "under the form of the law governing such cases, that the witness would testify, if he were present, as stated in the affidavit." Upon this admission the cause was tried in the Madison Circuit Court; appellant was convicted, and appealed to this court, where the judgment was reversed, and the admission by counsel for the State was held to be an admission of the truth of the facts stated in the affidavit. *Powers* v. *State,* 80 Ind. 77.

It was after this reversal that the venue was changed to the Hamilton Circuit Court. In connection with the affidavit appellant offered to prove that since the former trial said Hayes died. This affidavit was made for a continuance upon the first trial. For the purpose of avoiding that continuance the admission was made. The affidavit served its purpose, and we know of no rule upon which its admission as evidence upon a subsequent trial can be claimed, and think the court did right in excluding it. *State* v. *Felter,* 32 Iowa, 49; *McKinney* v. *Town of Salem,* 77 Ind. 213; *Wheat* v. *Ragsdale,* 27 Ind. 191; *Hays* v. *Hynds,* 28 Ind. 531.

During the trial appellant offered to prove, that, on the morning after the injury, Hougham, the injured person, said to appellant, in the presence of the witness, that appellant did not hit him with a rock on the night before, but that another party did, etc. This was excluded; appellant excepted, and made the ruling one of the causes for a new trial. This ruling is brought to our attention in counsel's brief, but no authorities are cited. Clearly the court committed no error in excluding the offered testimony. *Binns* v. *State,* 57 Ind. 46; *Wheeler* v. *State,* 14 Ind. 573.

We are asked to consider the sixth, eighth, eleventh, twelfth and thirteenth grounds for a new trial as stated in the motion.

The sixth is, that the court below erred in allowing too much latitude to one of the counsel for the State in his argument to the jury.

The eighth is, substantially, that the trial court erred in refusing to allow appellant to prove that during his sixteen months imprisonment he made no effort to escape, etc.

The substance of the eleventh is, that the court, although requested to charge in writing, gave to the jury oral instructions.

The twelfth is, that the court erred in reading to the jury the statute defining " homicide," and in permitting the jury to take the statutes with them into the jury-room.

The thirteenth is, that the jury, during their deliberations. in the jury room, read and examined the statutes and notes therein contained. Upon the same paper with the motion for a new trial, and as a part of the motion, there is an affidavit, by appellant, that the matters and facts set forth in the sixth, eighth, eleventh, twelfth and thirteenth grounds are true. The motion for a new trial is incorporated into the bill of exceptions. Although unnecessary, this brings the motion into the record ; but the truth of the matters stated in the several grounds is not established by the affidavit. Every thing stated in the sixth, eighth, eleventh, twelfth and thirteenth reasons in the motion were within the knowledge of the judge presiding at the trial, and whether the matters. therein stated are true, or actually occurred, must be stated in the bill of exceptions over the signature of the judge ; otherwise this court can not know of the truth or falsity of such statements. *Choen* v. *State,* 85 Ind. 209. As the bill of exceptions in this case contains nothing but the motion for a new trial, by which we can know of the truth of the matters. stated in the sixth, eighth, eleventh, twelfth and thirteenth reasons, it follows that we can not consider any of the questions sought to be raised and preserved by said reasons as. stated in the motion.

The ninth reason in the motion for a new trial discussed

by counsel is, that the court erred in its instructions to the jury. The substance of the argument of appellant's counsel is, that the instructions as given were wrong without giving more; that, taken together, they failed to properly inform the jury upon the law of involuntary manslaughter; that, so far as they related to this subject, they did not enlighten, but misled the jury. These general statements are made in relation to the instructions as a whole. They do not meet the requirements of a brief. In what the instructions fell short, or in what way they misled the jury, is not stated. We can not search through the record for error, on general statements that error is contained in it. Errors not specifically pointed out with some kind of argument are deemed waived. *Milli-kan* v. *State, ex rel.,* 70 Ind. 283, and cases cited; *Merrick* v. *Leslie,* 62 Ind. 459; *Williams* v. *Nesbit,* 65 Ind. 171; *Bray* v. *Franklin L. Ins. Co.,* 68 Ind. 6.

If instructions are not as full as desired, or do not cover all of the points in the case, the party desiring further instructions must ask for them, and submit such as he desires given. Appellant's counsel argue that under section 1823, R. S. 1881, it was the duty of the court, without suggestion or asking, to properly instruct the jury upon every point in the case. The position seems to be that if, by oversight, mistake or accident, any point is omitted by the court in its instructions, the omission is fatal, whether the attention of the court may have been called to the matter or not. In other words, that the party and his counsel, knowing that the court is omitting to instruct the jury upon some point in the case, may remain quiet, and, without asking for further instructions, procure a reversal of the judgment on account of such omissions. Such a practice would be wrong in theory and mischievous in results. Sections 103 and 113 of the criminal code of 1852 (2 R. S. 1876, pp. 400 and 402), taken together, are the same in their requirements as the act of 1881. The uniform ruling under these sections has been that a party desiring further instructions must ask for them. *Hodge* v. *State,*

85 Ind. 561; *Burgett* v. *Burgett*, 43 Ind. 78; *Jones* v. *Hathaway*, 77 Ind. 14; *Rollins* v. *State*, 62 Ind. 46; *Blacketer* v. *House*, 67 Ind. 414; *Bissot* v. *State*, 53 Ind. 408; *Fisher* v. *State*, 77 Ind. 42; *Adams* v. *State*, 65 Ind. 565.

It may be added, further, that excepting to the instructions given, and assigning the giving of the same as error, would not save the question of the omission to give others.

Specific objections are made to the seventh instruction given by the court. This instruction is as follows: " Manslaughter is the unlawful killing of a human being without malice, express or implied, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act. And if you find from the evidence, beyond a reasonable doubt, that the defendant did the killing unlawfully and voluntarily, but in a sudden heat or transport of passion, or involuntarily in the commission of an unlawful act, and without malice, express or implied, then the offence would be manslaughter, and you should so find him guilty."

The only objection urged against this instruction is stated by counsel as follows: " The court instructs the jury that there is but one crime of manslaughter, and gives the jury as the definition of that crime the language of the statute constituting both crimes, voluntary and involuntary. These crimes are distinct, and not one, as treated by the court." Counsel do not inform us how the alleged omission worked injury to appellant. We are not told what benefit would have resulted to him had the court told the jury more explicitly that voluntary and involuntary manslaughter are distinct offences. Whether the evidence showed appellant to be guilty of the offence of voluntary or involuntary manslaughter we can not tell, as the evidence is not in the record. We think that the instruction, as an abstract proposition, states the law correctly, and in the absence of the evidence we must presume that it states the law applicable to the case made. *Schoonover* v. *Irwin*, 58 Ind. 287.

The tenth reason for a new trial discussed by counsel is the

alleged error in refusing to give to the jury an instruction asked by appellant. This instruction is as follows: "Involuntary manslaughter is when any person shall unlawfully kill any human being without malice, express or implied, involuntarily, but in the commission of some unlawful act, and if you believe the defendant guilty of involuntary manslaughter in this case, you should find him not guilty under this indictment for murder, as involuntary manslaughter is not included in the crime charged in the indictment."

In the absence of the evidence, we must presume that the court below properly refused to give this instruction. It may have been refused because not applicable to the evidence; or it may have been refused because not asked in the proper manner. *Freeze* v. *DePuy*, 57 Ind. 188; *Stout* v. *Stout*, 77 Ind. 537; *McCalment* v. *State*, 77 Ind. 250.

Preceding the instructions, in the bill of exceptions, is a statement that upon the trial there was some evidence tending to show that the killing mentioned in the indictment was one of involuntary manslaughter. This statement, which is a conclusion of law and fact, can not take the place of the evidence required by the statute in order to present an error on appeal. R. S. 1881, section 1848. But, aside from this, we think that the instruction was properly refused, as not stating the law correctly. The statute provides that, upon an indictment for an offence consisting of different degrees, the defendant may be acquitted of the higher charged, and found guilty of any degree inferior thereto; and that in all other cases the defendant may be found guilty of any offence, the commission of which is necessarily included in that with which he is charged in the indictment. R. S. 1881, sections 1834 and 1835.

It has been held by this court a number of times, that upon an indictment for murder in the first or second degree the defendant may be convicted of manslaughter. Whether the manslaughter be voluntary or involuntary can make no difference in the application of the rule. *Carrick* v. *State*, 18 Ind. 409; *Dukes* v. *State*, 11 Ind. 557; *Moon* v. *State*, 3 Ind. 438.

It is further argued that the court below erred in giving to the jury the eleventh instruction. In that instruction the court told the jury that while it was the duty of the court to instruct them as to the law bearing upon the case, they were not bound by the instruction.

We see no error in this instruction. The law makes it the duty of the court to instruct the jury upon the subject, and the constitution gives to the jury the right to determine the law in a criminal case. R. S. 1881, sections 64 and 1823; *Fowler* v. *State*, 85 Ind. 538.

After a patient examination of all the questions discussed by counsel, we think that there is no error in the record for which the judgment should be reversed.

The judgment is therefore affirmed.