Burger *v.* Rice.

3   125
144   89

A contract, under the R. S. 1843, for the maintenance of the poor, imposes upon the party contracting to maintain them, a personal trust which he cannot assign.

Nov. Term, 1851.

BURGER
v.
RICE.

Saturday, November 29.

An agreement by him to assign the contract is void as against public policy.

ERROR to the *Floyd* Circuit Court.

PERKINS, J.—Assumpsit by *Burger* against *Rice*. The declaration alleges that the defendant had agreed, in consideration, &c., to give to the plaintiff the keeping of one-half of the paupers of *Floyd* county, at a certain price; that the plaintiff had been ready and willing to keep them, &c. There is, also, a count for the boarding of paupers, &c.

Pleas, the general issue, and accord and satisfaction. Replication to the second plea, no accord, &c. Issues of fact, and a jury trial. Verdict and judgment for the defendant.

On the trial, *William Thomas* testified that, about the 1st of *May*, 1847, the day on which *Rice* contracted with the overseers of the poor of *Floyd* county to keep the paupers for said year, he was in *New Albany*. On the way home, he heard *Rice* and *Burger* state over the contract between them. They had been keeping the paupers the year before. They were each to keep what they then had, and as each additional pauper was brought out, each was to take alternately. *Burger* was to have one-half, and *Rice* one-half. If there was a turbulent one, they were to keep him month about. *Burger* was to receive one dollar a week each for those he kept, and was to feed, clothe, and lodge them. *Rice* made the same contract with *Burger* for keeping the half, that he had with the overseers for keeping the whole. The contract between them was for one year.

*John Watts* was present and heard the contract between *Rice* and *Burger* made. It was as testified to by *Thomas*, and was made in the court-house yard in *New Albany*, on the day *Rice* contracted for the poor with the overseers. *Burger* was prepared and willing, during the whole year, to keep the half of the paupers, and *Rice* was so informed. *Burger* did keep them awhile, and received his pay for so doing, according to the contract. He at one time complained to *Rice* that his portion of the paupers

were taken from him. *Rice* replied that they had not been well treated about eatables; that the overseers of the poor for *Lafayette* township had been down and ordered them taken away.

The Court gave to the jury the following instructions:

"The contract between the defendant and the overseers, for the maintenance of the poor, if made pursuant to law, is a valid contract. It imposed upon *Rice* a personal trust which he could not rightfully transfer to another. Such a transfer is not in accordance with the terms of the contract, is not authorized by law, and is in violation of most obvious principles of public policy. A contract by which the defendant was to place one-half of the paupers, for the term of one year, under the exclusive control of the plaintiff, who agrees to provide for them in the mode, and for the consideration, stipulated in the contract between the overseers and *Rice*, is illegal. If the evidence satisfies you that such was the contract between the parties to this suit, you should find for the defendant. The law will neither enforce such a contract, nor relieve a party from loss by having in part performed it."

The following is the provision of law under which the paupers were disposed of to *Rice*:

"It shall be the duty of the overseers of the poor in such counties as have in them no common poor-house established by law, two weeks next preceding the first *Monday* of *May* in each year, to give public notice, by having published in the newspaper or newspapers of their respective counties, or by posting upon the court-house door, and in other public places in such counties, an advertisement certifying the poor that are to be provided for, and asking sealed proposals for their maintenance during said year, which sealed proposals shall be opened and acted on by said overseers on said day; but nothing herein contained shall prohibit any overseers of the poor from receiving and accepting propositions, at any time, for the keeping of such poor persons as may, in the interim, become a county charge." R. S. p. 356, s. 6.

The decision of this case may depend somewhat, per-

haps, on the construction to be given to this section of the statute. If, by it, we are to understand that the overseers of the poor are bound to turn them over to the keeping, for the year, of that person of responsibility whose bid may be the lowest, regardless of the moral character of the bidder; if, for example, the keeper of a brothel or any other house that might be a public nuisance, would be entitled to take them upon the lowest bid and sufficient security, then, it would seem that we could not say that there was anything of personal trust connected with the keeping of the public poor; nothing of the principle, *detur digniori*. But, if the overseers, in awarding the paupers upon bids received, are to be influenced by the moral character of the bidder, as well as by the price offered and the responsibility connected with it, then the keeping of the poor may well be regarded as a personal trust, which, of course, cannot be transferred by assignment, and can only be shifted upon another with the consent of the overseers. If the paupers are awarded to the contractor's personal care, on account of his fitness to bestow such as is proper, he must exercise that care himself.

This latter construction is not repugnant to the letter of the law, for it does not declare that the paupers shall be given to the lowest bidder; and it is, we think, the construction which the moral sense and the dictates of humanity require to be given. This construction is also somewhat favored by other provisions of the law. Section 5, p. 356, R. S., makes it the duty of the overseers to exercise a general oversight as to the treatment of the paupers; and by section 34, R. S., p. 361, the county commissioners, in those counties where asylums are built, are to employ some *humane* person to take charge of the same.

As to the right of assignment, there are analogous cases in law. Among them, that of an apprentice may be mentioned. A contract of apprenticeship is not assignable, except by consent of the parties concerned. 2 Kent's Comm. 264, and note *f*. See, also, *Blach-*

*ford* v. *Preston*, 8 T. R. 89.—*Richardson* v. *Mellish*, 2 Bing. 229.

In this view of the case, the contract between the plaintiff and defendant was against public policy and void.

*Per Curiam.*—The judgment is affirmed with costs.

*R. Crawford*, for the plaintiff.

*J. Collins*, for the defendant.