May Term,
1859.

RIGGS
v.
ADAMS.

*Per Curiam.*—The judgment is affirmed with 3 per cent. damages and costs.

*M. M. Ray* and *T. A. McFarland*, for the appellants.

*R. Robbins, J. S. Scobey*, and *W. Cumback*, for the appellee.

---

RIGGS *v.* ADAMS.

Action commenced before a justice of the peace, upon a promissory note. No answer. On the trial, the defense was, that the note was given for an illegal consideration, namely, for services rendered by the plaintiff for the defendant as clerk of the defendant's lottery office. There was no evidence of any special contract before the services were performed; nor was there any evidence that the plaintiff had performed any services of an illegal character.

*Held,* 1. That the action having been commenced before a justice, evidence of the consideration was admissible without answer.

2. In the absence of proof that the plaintiff performed acts of service which were expressly prohibited by law or public policy, it cannot be conclusively presumed that he did so, because he was the employé of one who might have contemplated or performed such acts; nor can it be presumed, in the absence of proof of the terms of his contract, that by its stipulations he was to perform illegal acts.

The constitutional provision against lotteries, is in restraint of legislative authority to authorize lottery schemes in the state, or the sale of tickets within the state in schemes organized without the state.

APPEAL from the *Henry* Court of Common Pleas.

HANNA, J.—This was a suit commenced before a justice of the peace on a promissory note. On appeal to the Court of Common Pleas, there was a judgment for the defendant.

Friday,
May 27.

No answer was filed. Upon the trial, the defense attempted to be made, was, that the note was given for an illegal consideration, namely, for services rendered by *Riggs* for *Adams*, in the capacity of clerk in his, *Adams's*, lottery office, whilst he was getting up and drawing several lotteries.

The first objection is, that evidence of the consideration of the note should not have been received without an affirmative answer. The action having been commenced before a justice of the peace, the evidence was admissible without answer. 2 R. S. p. 455.

The next point made, is, that "drawing a lottery, &c., is not a crime *malum in se*, nor of that class of acts, void as against public morals or public policy."

This question is fully considered in the case of *Swain* v. *Bussell*, 10 Ind. R. 438. We see no reason to change the conclusion there arrived at.

It is insisted that the acts of the plaintiff were innocent, and not tainted with illegality. The evidence shows that he acted as the clerk of *Adams*, who got up and drew several lotteries, in writing in his lottery office, answering correspondence, making out the numbers of blanks and prizes, &c., but no part of his services were in selling tickets; that he acted generally as his clerk, and the note was given for that service, after the performance thereof. There is no evidence of a special contract before the services were performed, nor of any contract other than an implied one, until the execution of the note sued on.

The question, then, upon this evidence, is, whether, for the services indicated, an implied contract would be presumed in favor of the plaintiff, by which he could recover the reasonable value of his labor. This is the most favorable light in which the case can be put for the defendant.

The introduction of the note made a *prima facie* case for the plaintiff. The evidence of the defendant disclosed the services that were performed by plaintiff as a consideration for the execution of the note, but did not disclose the agreement upon which that service was so performed, or whether there was any such. If the agreement was

general, to labor in a particular capacity, as clerk, for in-
stance, it would not be presumed that illegal acts should
form any part of the contemplated service; and if, in the
progress of that service, a small portion of that performed
at the request of the employer, should consist of illegal
acts, a question would then arise whether such acts should
prevent the clerk from a recovery of any portion, or of the
whole, of his wages. For instance, if the clerk of a dry
goods merchant should, by request, sell an article, the sale
of which was prohibited as being against law and public
policy, should he, by that illegal act, be prevented from
recovering his wages during the whole time of his service,
or should it defeat the recovery of a portion, and if so,
how much (1)?

In this case the evidence shows that, upon a settlement,
the note was executed. The law will not presume that the
consideration, or any part of it, upon which the note was
founded, was illegal.

The position contended for by the defendant, if sanc-
tioned, would exclude the manufacturer of articles that
might be used in gaming, such as billiard tables, &c., or
the printer of blank lottery tickets, from a recovery for his
labor.

We think the true rule is indicated in the case of *Cum-
ings* v. *Henry*, 10 Ind. R. 112; and when applied as a test,
in the case at bar, would require the determination of the
question, whether the acts of the plaintiff were such as
were prohibited by law, or against public policy; and such
as were provided for in the contract of employment.

The constitutional provision is, that "No lottery shall be
authorized; nor shall the sale of lottery tickets be allowed."

The first branch of this constitutional provision is evi-
dently in restraint of the legislative authority upon the sub-
ject involved, and was intended to prohibit that body from
authorizing such schemes to be consummated in the state,
under the sanction of the public authorities, either for a
public or private purpose. The second branch would, in
like manner, restrain the law-making power from authoriz-

May Term,
1859.

RIGGS
v.
ADAMS.

ing the sale, within the state, of tickets in any scheme got up without the state.

The statute, following this constitutional provision, forbids any person, under a fine not exceeding 500 dollars, from selling any lottery tickets, or share in any lottery or scheme for the division of property, to be determined by chance, or from making or drawing any lottery or scheme for division of property, not authorized by law. 2 R. S. p. 437.

The evidence in the case at bar does not disclose that the plaintiff sold either tickets or shares in any lottery or scheme. Indeed, it affirmatively shows that he did not. Nor does it show that he either made or drew any lottery, although he was in the service of one who did.

In the absence of proof that the plaintiff performed acts of service which were expressly prohibited by law or public policy, it will not be conclusively presumed that he did so, because he was in the employ of one who might have contemplated or performed such acts; nor will it be presumed, in the absence of proof of the terms of his contract of employment, that, by its stipulations, he was to perform illegal and unauthorized acts.

It therefore follows that the evidence, upon these points, was not at all sufficient to authorize the finding for the defendant.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. H. Mellett*, for the appellant.

*W. Grose* and *J. Brown*, for the appellee.

(1) See *Armstrong* v. *Toler*, 11 Wheat. 258; *Faikney* v. *Reynons*, 4 Burr. 2069; Chit. on Cont. 570; 5 Blackf. 265; 5 Ind. R. 356.