CIRCUIT COURT FOR MULTNOMAH COUNTY, JANUARY TERM, 1871.

## S. E. FLEMING AND P. NEVIL, PETITIONERS, *v.* CINCINNATUS BILLS, SHERIFF.

HABEAS CORPUS.—On *habeas corpus* to discharge from an order holding to bail, a rehearing of the evidence is not a matter of course.

PROCESS.—Informality in the commitment will not justify a discharge when it is in the power of the petitioner to produce the record, and he fails to produce it.

CERTIORARI AS AUXILIARY TO HABEAS CORPUS.—A writ of review as auxiliary to the writ of *habeas corpus* being granted, the court refused to rehear the witnesses who were examined before the committing magistrate.

LOTTERY.—A lottery is a game of hazard in which small sums are ventured for the chance of obtaining greater. Payment of prizes in money is not essential.

PROCESS.—An order of commitment made by a court having jurisdiction, is not void because of error of fact or of law.

A WRIT of *habeas corpus* having been served on C. Bills, sheriff of Multnomah County, he returned the writ, stating that the petitioners were held by virtue of a commitment issued by D. C. Lewis, Police Judge and *ex-officio* Justice of the Peace. The return sets out a copy of the commitment, which purports to follow section 403 of the criminal code; but in designating the crime it uses the words "carrying on

a lottery." The statute, in defining the offense, uses the words: "If any person shall promote or set up any lottery *for money* or other valuable thing—"

The petition stated that the imprisonment was illegal, in that—

1st. The complaint does not contain facts sufficient to constitute the offense charged.

2d. The facts stated in the complaint do not constitute an offense.

3d. There was no evidence produced before the aforesaid justice to establish the offense charged.

*Lansing Stout* and *Theodore Burmister*, for the petitioners, said:

We are willing to waive the informality of the commitment if the case can be heard on what we deem its merits. The evidence before the magistrate proved a raffle, but had no tendency to prove the existence of a lottery.

We move for subpœnas, and for the privilege of submitting the same evidence that was submitted to the justice.

*A. G. Gibbs*, District Attorney, objected.

The motion was denied.

It was *held*, that a rehearing is not a matter of course on *habeas corpus* to discharge from an order holding to bail, and that a discharge cannot be granted on a *habeas corpus*, on a claim that the decision is against the *weight* of evidence. That if the circuit court or judge should undertake to re-examine the witnesses on such ground, it would not be exercising an appellate or supervisory jurisdiction, but simply performing the labor of the committing magistrate a second time—since the proof may be very different to-day from what it was on the examination.

The petitioner's counsel moved for a discharge for defects in the commitment: *Held*, That informality in the commitment will not justify a discharge where it is in the power of the petitioner to produce the record and he fails to produce it. (Hurd on Habeas Corpus, 355 *et seq.*)

The petitioners then produced a certified copy of the

justices' docket, as a foundation for leave to introduce evidence.

The district attorney objected that if the purpose was a review, the proceedings should be regularly brought up, that the judge might have jurisdiction to remand the case to the justice if error should be found.

The objection was sustained. (*Id.* 358.)

The petitioners then asked and obtained time to apply for a writ of review, as auxiliary to the writ of *habeas corpus*.

Upon return of the writ of review, the docket entries disclosed an order reciting a complaint, and reciting that an examination was had, witnesses of both parties being examined and a statement waived, and that an order of commitment was entered in regular form.

The petitioners' counsel renewed the motion for leave to examine the witnesses *de novo*, claiming that since the repeal of the law requiring the evidence to be written there was no other mode of review.

The district attorney claimed that the repeal was for the purpose of preventing any re-examination of the evidence. *Held*, That the proposition to re-examine the witnesses is subject to the objection that it would not be a review of what had been done by the justice; that there is no issue as to what can be proved at the present; and that the material point relates to what was done on the examination.

The parties consented to proceed according to the rule adopted, in cases of alleged *error of fact*, by the circuit court of the District of Columbia. The rule is found in Hurd on Habeas Corpus, page 354. Under that rule the committing magistrate made a statement of what occurred on the examination. (The oath was waived.)

It appeared from the statement of the police judge that the proofs before him were to the effect that the petitioners were conducting a scheme or game operated by means of dice and a box containing prizes. The box was divided into compartments; these compartments were numbered from eight to forty-eight inclusive. Some of these compartments contained prizes; others were empty or blank. The game

was played by means of eight dice thrown by the person who chose to pay the specified sum for the chance of winning a prize. If such person threw a number corresponding with the number of a compartment containing a prize, he became entitled to a prize contained in that compartment, otherwise he received nothing.

Reference was also made by the police judge to some evidence of experts touching the meaning of the word "lottery."

The case was argued at length; Mr. Burmister claiming that the game in question is a raffle and not a lottery, and the district attorney arguing that it is a lottery.

UPTON, J. filed the following opinion:

The constitution of the state prohibited lotteries and the sale of lottery tickets, and the statute makes a violation of this clause of the constitution punishable as a felony; other games of chance forbidden by statute are declared misdemeanors. The importance to the petitioners of this distinction is obvious.

The recent inauguration of lotteries in a neighboring state, on a scale of such magnitude, and under such specious appearance of morality and even benefaction, as to include this state within the circle of its influence and make it part of the theatre of its practical operations, adds to the present interest and importance of every question of penal law on the subject.

These considerations have led me to make a careful examination of all the authorities presented by counsel, and of such others as are accessible, touching what is treated as the principal question in the case; that is, whether the game in question is one that is forbidden by the constitution and made punishable by imprisonment in the penitentiary.

The following definitions of the word "lottery" have been laid down by the law writers:

"A game of hazard in which small sums are ventured for the chance of obtaining greater." (*Bell* v. *State*, 5 Sneed, 507.)

"A scheme for the distribution of prizes by chance." Bouv. Law Dic. (Webster also uses the same words.)

"A game wherein a person paying money becomes entitled to money, or some other thing of value, on contingencies, to be determined by lot cast by the managers of the game." 2 Bishop Cr. L. s. 946. Mr. Bishop says: "This definition has not been laid down in words by the tribunals."

"Payment of prizes in money is not essential to a lottery." (3 Seld. 237.) "The art union scheme is a lottery." (*Id.* 239.)

Bouvier, in his dictionary, under the title "Gaming," says: "There are some games which depend altogether upon skill, others upon chance, and some others are of a mixed nature. Billiards is an example of the first, lottery of the second, and backgammon of the last."

The petitioners claim that the game or scheme here presented differs from, and lacks the essentials of a lottery in these particulars: First, in this game the person paying the money casts the lot; Second, a scheme or game is not a lottery, unless all the ticket holders, or all the persons paying money, taken collectively, have a certainty that some one or more of their number will gain the prize or prizes hazarded. They rely particularly on the definition given by Bishop.

I have examined most of the authorities cited by Bishop, and I do not find it laid down that the lot must be *actually* cast or drawn *by the managers of the game,* or that a personal participation by the party paying, such as drawing a number with his own hand, would so change the character of the scheme that it would not be a lottery.

These citations are (3 Seld. 228 and 240; 13 Barb. 577; 2 Denio, 88; 2 Mill, 128; 3 Zab. 465; 5 Rand. 652 and 715.)

There is some reason drawn from the definitions cited to think that, if throwing the dice is an exhibition of skill on the part of the person who pays for the chance, the circumstance is material—for it seems essential to constitute a lottery that the scheme should not be a game of skill. But is the throwing of the dice in an honest manner an exhibi-

tion of skill? I think that mode is selected on the theory that the result of a fair throw of the dice is wholly a matter of chance. Nor do I find any adjudication to the effect that a scheme is not a lottery, unless each holder of a chance, or all of them collectively, has a certainty that a prize or prizes will be gained by some one of their number.

If, as is claimed that the word "distribution," used by Bouvier and Webster, tends to such an inference, it is certainly not a necessary deduction from the language of their definition.

"A scheme for the distribution of prizes by chance" may provide for distributing them all at one time or at several times, absolutely to one set of persons or conditionally to that set or class. It may allow one person to exhaust all his chances, before other persons accept a chance, and still the scheme is within that definition.

Since no adjudication has been found directly in opposition to the decision of the police judge, that decision should not be reversed, unless some sound reason is found elsewhere for holding that he is in error.

The American Cyclopædia thus defines lottery: "A gaming contract, by which, for a valuable consideration, one may by favor of the lot obtain a prize of a value superior to the amount or value of that which he risks." The writer says: "In its best and most frequent application, the word describes those schemes of this nature which are conducted under the supervision and guarantees of government."

The same work continues: "Two kinds of lottery may be distinguished. The Genoese or Numerical, and the Dutch or Class lottery." This work describes the former as a scheme by which, out of ninety consecutive numbers, five are to be selected or drawn by lot. "The players fixed upon certain numbers, wagering that one, two or more of them would be drawn among the five, or that they would appear in a certain order."

Of the Dutch or Class lottery the author says: "In this species the number and value of the prizes are regularly estimated, all the ticket holders are interested at once in the play, and chance determines whether a prize or a blank shall fall to a given number."

The position taken ·by the petitioner's counsel is, substantially, that no scheme is a lottery unless it comes within the last definition.

What is called the Genoese lottery certainly does not come nearer to what is claimed by the defendant's counsel as indispensable, than does the scheme presented in this case. In the Genoese lottery it is not essential that there should be tickets or ticket-holders, or that a given number of chances should be taken, nor that the holders of chances should have a certainty that a prize, or anything of value, would be gained by one or more of their number, or that there should be more than one person at the time betting, or venturing money against the managers of the game.

From my examination of the case I am not prepared to say that the committing magistrate erred in holding the game in question to be a lottery. I cannot, therefore, upon the writ of review, reverse his decision. The record discloses sufficient to cure the alleged defeat of form in the commitment. (Hurd on Habeas Corpus, 353.)

When the charge was duly presented, and the defendants were brought before the magistrate, the magistrate had jurisdiction to proceed with the examination, and to decide every question of fact or law that was presented, including making the order of commitment. Such an order, made by a court having jurisdiction, is not void, even though it may be voidable, because of error of fact, or of law, but the imprisonment is legal until the order is set aside, consequently the petitioner is not entitled to be discharged solely for informality in the commitment.

If I was satisfied that the order was erroneously made, it would be my duty to reverse it. But I am not satisfied that such is the case, and must deny the petition.