No. 17,557.

## LYNCH *v.* ROSENTHAL.

CONTRACT.—*Lottery.*—*Public Policy.*—*Sale of Lots.*—A sale of lots, to be drawn by the purchasers and the advantages of location, character, size, or condition as between lots of the same class, to be determined wholly by lot, while one prize lot was to be given to some one of the purchasers as the result of chance, is contrary to public policy and void.

SAME.—*Specific Performance.*—*Estoppel.*—*Illegal Contract.*—In an action to enforce such a contract of sale against a purchaser, the defendant is not estopped from exposing the vice of the contract, although he did not urge it as a defense prior to the suit.

From the Adams Circuit Court.

*Mann & Beatty, La Follette & Adair* and *France & Merryman,* for appellant.

*R. K. Erwin* and *J. R. Bobo,* for appellee.

HACKNEY, C. J.—This was a suit by the appellant against the appellee for specific performance of a contract for the purchase of real estate. The material features of the contract were that Lynch held a contract for the purchase of a tract of land lying adjacent to the corporation line of the city of Decatur, in Adams county, which land he was about to plat as an addition to said city, in accordance with a diagram then drawn and made a part of the contract, exhibiting fifty-four lots. The appellees and others agreed severally by the express provisions of that contract, to purchase of said first party (Lynch) the number of lots indicated by the number placed opposite 'his name' on the following conditions, to-wit : "The price of said lots shall be the same as shown by the annexed plat," the prices varying according to classes and loca-

tions, "and whenever all of said lots are sold, except the six lots  *  *  marked 'reserved'  *  *  and the lots marked 'to be given away,' then said second parties shall meet and determine by lot the number of the lot or lots to be awarded to each respective subscriber, and shall also determine in some manner, to be agreed upon by themselves, the manner of awarding the prize lot; as soon as said lots are awarded and it is determined in whom the respective ownership shall lie, then the said Allen T. Lynch shall make out and deliver to each party a good and sufficient warranty deed for each of said lots, to each of said subscribers." It is further stipulated that one-half of the purchase price for any lots shall be paid or secured when the deed is delivered and the other half when Lynch may build and put in operation, near the lots, a furniture factory of the character therein described. There were thirty-five subscribers for one lot each, the appellee being one of that number.

Each of the three paragraphs of complaint alleges subscriptions for less than the whole number of lots for sale under said contract, and the waiver, by all parties, of any requirement to sell all of such lots; that all of the subscribers, including the appellee, met and determined by lot which of the platted lots should be designated for conveyance to each subscriber, including a described lot for the appellee. And it is alleged in detail that the appellant complied with the requirements of the contract on his part; that he executed the required deed of conveyance to the appellee and tendered it to him and upon his refusal to accept it the same was brought into court for him.

To the complaint the appellee filed seven answers in bar, the 3d, 4th, 5th and 6th of which were sustained, against the appellants' demurrer, and are here assigned as severally insufficient.

The third answer pleads that all the lots agreed to be sold were not sold and that the stipulation as to the sale thereof was not waived. This much of the answer presents the same question arising upon the sixth paragraph of answer. Counsel offer no objection to the sufficiency of either of these paragraphs in this respect, and we observe no objection to them. If all of the lots had gone into the hands of separate *bona fide* purchasers their prospective value would certainly have been greater than if but few had been sold and a large number left in the hands of a single owner. But, in addition to this feature of the third paragraph it alleges that, after said subscriptions were made, the appellant and a number of subscribers met and upon the suggestion and assistance of the appellant and his attorney, certain of said fifty-four lots were awarded to the subscribers severally by placing the numbers of lots severally upon tickets and placing them in a box, and then by placing the names of the subscribers severally upon tickets and placing them in another box, whereupon two persons, who were blindfolded, drew simultaneously from the boxes a name and a number of a lot until all of the names were drawn; that in each instance the lot whose number was drawn, when a name was drawn, was awarded to the subscriber whose name was so drawn and constituted the selection of the lot to be conveyed to him; that at the same time and in the same manner said persons awarded the prize lot to one of the subscribers, that is to say: they placed in one box thirty-four blank tickets and one ticket marked "prize lot," and in the other box tickets containing severally the names of the subscribers, and as names were drawn from one box tickets were drawn from the other until the name of one subscriber and the ticket bearing the "prize lot" ap-

peared simultaneously, when that lot was awarded to such subscriber and was thereafter conveyed by appellant to him. The contract and the manner of its attempted execution are alleged to have been void as against public policy.

The fourth answer alleged that the prices of the lots as marked upon the plat were in excess of the actual values of the lots and that the appellant, as an inducement to persons to subscribe, offered the chance of obtaining the prize lot in addition to that subscribed for; that appellant participated in the drawing which was described as in the third paragraph.

The fifth answer alleged the stipulations of the contract as to the selection of the lots subscribed for and the awarding of the prize lot; that the lots were not of the values placed upon them and that the values of those in any class were variant, so that one person drawing at lot, at a given price, might obtain one of greater or less actual value than that obtained by another subscriber drawing one of the same price.

Appellant's learned counsel have not discussed their objections to these answers separately, but they have attacked them collectively as not disclosing the invalidity of the contract. They will be regarded, therefore, as having waived all other questions arising upon them.

The argument is not made that contracts tainted with the vice of lottery schemes are enforcible. That such contracts are against public policy and that those who have entered into them shall have no relief, in the courts, to enforce those that are executory or to recover that which has passed under such as have been executed, is without doubt. Section 15, Art. 8, State Const.; *Burger* v. *Rice*, 3 Ind. 125; *Swain* v. *Bussell*, 10 Ind. 438; *Rothrock* v. *Perkinson*, 61 Ind.

39; *United States* v. *Olney*, 1 Abb. 275; *Whitney* v. *State*, 10 Ind. 404; *Crews* v. *State*, 38 Ind. 28; *Hudelson* v. *State*, 94 Ind. 426; *Riggs* v. *Adams*, 12 Ind. 199; Am. and Eng. Ency. of Law, p. 1187; R. S. 1894, sections 2170, 2171, 2172 (R. S. 1881, sections 2076, 2077, 2078).

The important question here is as to the character of the present contract. Does it infringe this principle of public policy? This inquiry depends upon what a · lottery scheme is. In *Hudelson* v. *State*, *supra*, it was held that where a merchant, with each sale of merchandise to the value of 50 cents, gave the purchaser the right to guess as to the number of beans in a glass globe, the nearest guesser to receive a gold watch, the transaction was a lottery. The court there quoted with approval several definitions of a "lottery," some of which are as follows: "Whether the enterprise * · * be called a scheme of chance, a gift enterprise, or a lottery, it is still a scheme of chance, and in that sense a lottery or gift enterprise. *Lohman* v. *State*, 81 Ind. 15." "Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what, and how much he who pays the money is to have for it, that is a lottery." *Hull* v. *Ruggles*, 56 N. Y. 424. "A lottery is a scheme for the distribution of prizes by chance." In *Rothrock* v. *Perkinson*, *supra*, it was said: "It is well settled in this State that every scheme for the division or disposition of property or money by chance, or any game of hazard, is prohibited by law, and that every contract or agreement in aid of such a scheme is void as against public policy," citing, in connection with some of the cases we have cited, those of *Higgins* v. *Miner*, 13 Ind. 346; *Thatcher* v. *Morris*, 11 N. Y. 437. Lot is defined to be "a contrivance to determine a question by chance, or without the action of man's

choice or will." *Chavannah* v. *State*, 49 Ala. 396; Am. and Eng. Ency. of Law, p. 1181. Webster's International Dictionary defines *lot* as "Anything used in determining a question by chance, or without man's choice or will."

That the property subject to distribution possesses unequal values, so that one's good or ill luck, in the scheme of distribution, may determine whether he shall receive more or less for his investment, the scheme is a lottery. *Dunn* v. *People*, 40 Ill. 465. Nor is it less a lottery because the person whose property is distributed, or the person who pays, does not personally participate in the drawing. *Fleming* v. *Bills*, 3 Ore. 286; *Riggs* v. *Riggs, supra.*

By the definite language of the contract in this case the lot which the appellee agreed to purchase was to be determined by lot. It was to be one of the fifty-four parcels, to be designated wholly by chance and without the will or choice of the appellant or the appellee. Whether he was to pay $100 or $300 was a question over which he had no choice, and the appellant was without control. Any advantage in the selection, by reason of location, character, size or condition of a lot, from any of the various classes as arranged by the prices marked, was not to be determined by the judgment of a subscriber or the seller, but depended wholly upon the chances to be settled by "lot," as the contract provided. Distribution by chance was never more certainly contemplated, and if not so contemplated, the manner in which the appellee's alleged purchase was determined was never outrivaled as a method of chance, not even by the guessing upon the number of beans in the globe, for in that instance the person to be benefited exercised his own judgment in determining upon a number. The method adopted was no less objectionable, as one of

mere chance, than the methods of the old Louisville
Library Association, or the more recent Louisiana Lot-
tery.   If there had been nothing in the contract direct-
ing the choice by lot and the choice had been made in
the manner alleged in some of the answers every ob-
jection would prevail against it that would obtain if
the appellee had been assigned a lot as the result of
a game of cards, the throwing of dice or the turning
of the roulette.   In any one of these methods the re-
sult depends entirely upon chance and excludes the
exercise of the judgment.

In the case of *Swain* v. *Bussell*, *supra*, this court
quoted with approval from *State* v. *Clark*, 2 Fogg
(33 N. H.) 334, "that where a pecuniary consideration
is paid, and it is determined by lot or chance, accord-
ing to some scheme held out to the public, what the
party who pays the money is to have for it, or
whether he is to have anything, is a lottery."   In the
present case the subscriber is to get a lot more or less
valuable, depending alone upon chance, and he is to
pay for it a sum, more or less, depending alone upon
chance.   It was further said by this court, in the case
mentioned, referring to *Den ex Demise Wooden* v.
*Shotwell*, 3 Zab. (N. J.) 470: "Wooden had divided a
parcel of land into fifty-eight lots of unequal value,
from $50 to $600 per lot, and disposed of them at $75
each; and the particular lot of land to which each
person was to receive a title was determined by lot.
The supreme court of New Jersey say this was, both
in form and substance, a lottery."   The difference be-
tween that case and the present is merely in degree
of advantage or disadvantage to the parties in the
amount to be paid and the proportionate values to be
received as between those who make the payments.
The method of distribution in either involves the ob-
jectionable feature of chance, upon which property of

higher or lower value and greater or less price is determined without the exercise of the will and judgment of the parties.

The manner in which the chances in this case were determined is even more objectionable.   Here fifty-seven lots were made the subject of choice for the selection of but thirty-five lots, and thereby added to the objection of distributing thirty-five lots by chance, the further vice of placing the appellant's remaining twelve lots in the scale and his ownership, with locations, character and values all depending upon the result of the drawing.

Another feature of the contract and the manner of executing it is in the offer and award of the "prize lot."   Counsel for appellant seek to eliminate this feature of the contract and to uphold that which remains by insisting that this lot was a gift to all of the subscribers without contract, that it should go to any one by lot.   If this were true and the appellee was denied the benefit of that part of his contract by the appellant's conveyance to one of the subscribers in violation of the contract, we are at a loss to determine how he, the appellant, is in a position to insist upon the enforcement of a contract which he has violated and rendered impossible of complete execution. But we do not agree with this view of the contract. It is stipulated that a "prize lot" is "to be given away" and is to be "awarded" in a manner to be determined.   It is not stipulated that all of the subscribers shall become the owner of this lot nor, in fact, that any one of them shall, but, when the parties come together, with the knowledge and consent, if not the direct participancy of the appellant, the contract is construed to mean that the prize lot is to be awarded to some one of the subscribers who, by the result of chance, is proven to possess the luck to have his name

and the "prize lot" ticket drawn simultaneously. This construction of the contract is ratified and acted upon by the appellant in the act of conveying the lot to the lucky subscriber.

This construction of the contract renders certain that doubtful part of it which omitted to stipulate the person to whom and object for which the "prize lot" was to be awarded. It was to increase the interest of a subscriber who, by subscribing for one lot, had the chance, for the same money, to get two lots. We find, therefore, that both the contract and the manner of attempting to comply with its terms were against good morals, forbidden by public policy and void.

Appellant insists that the lower court erred in sustaining a demurrer to his reply to these answers, in which reply he alleged that when he tendered appellee's deed it was declined, not because the transaction was against public policy and void, but for the reason, then stated by him, that appellant had not complied with the requirement of the contract as to the building of a factory. Authorities to the proposition that one may not assert one defense out of court and another in court, to the prejudice of the complaining party, are cited. We do not stop to consider the true doctrine of these cases. It is enough to say that one who asks equity must present clean hands in which to receive it. Here the appellant, from the beginning, had unclean hands. He originated, carried forward and in this suit sought to enforce a vicious contract. He is in no position to ask that equity estop his ally from exposing the vice of that contract, the enforcement of which public morals forbid. The evidence supports the judgment of the circuit court. There is no error in the record and the judgment is affirmed.

Filed February 21, 1896.