WASHINGTON GLASS COMPANY v. MOSBAUGH.

[No. 2,367.    Filed January 14, 1898.]

STATUTE OF FRAUDS.—*Contracts Relating to the Sale of Lands.*—
Where a land improvement company made a parol contract with
defendant to purchase a lot on condition that a glass company
employing a certain number of men should locate its plant in the
town, and the glass company performed its part of the contract and
laid out and platted the land, and defendant selected his lot and
took possession thereof, the statute of frauds will not apply in an
action by the glass company against defendant for the purchase
price of such lot.    *pp. 105-112.*

LOTTERIES.—*Sales of Real Estate.—Selection Made by Lot.*—Where
several persons who had agreed to purchase town lots at a certain
fixed value per lot, the lots to be afterward laid off and platted by
vendor and divided among the several purchasers in such manner
as they might agree, by mutual agreement met and apportioned
them by lot, without participation therein by vendor, the contract
for the sale of such lots was not thereby rendered void.    *pp. 112-118.*

From the Hamilton Circuit Court.    *Reversed.*

*Shirts & Kilbourne* and *John W. Kern,* for appellant.

*Christian & Christian,* for appellee.

WILEY, J.—The only question presented by this
appeal is the sufficiency of the complaint.    On August
1, 1892, the Cicero Improvement Company entered
into a contract with the appellee and divers other per-
sons, whereby appellee and such other persons agreed
to purchase a certain number of lots, at a fixed price,
that were thereafter to be laid out and platted in the
northeast quarter of section one, township nineteen
north, of range four east, in Hamilton county, Indiana.
The consideration for this contract on the part of the

appellee was, that there was to be located in the town of Cicero in said county, a certain factory or factories, and the lot which was to be conveyed to the appellee should be apportioned and located in the manner agreed upon by the appellee and others, who were parties to the contract. On the 6th day of August, 1892, the Cicero Improvement Company entered into a written contract with the Washington Glass Company, whereby it was provided that the Washington Glass Company should locate and build on certain real estate, one sixteen-pot glass bottle factory, and were to employ not less than one hundred and fifty persons therein, and that the pay roll of such employes was not to be less than $1,500.00 per week. It was further agreed that said Glass Company was to lay out in town lots a certain portion of the real estate of which it was to become the owner, and to plat the same into lots, within ten days from the execution of the contract; and the Cicero Improvement Company bound itself to procure a sale of 150 of such lots, at an average price of $200.00 per lot, to be paid for one-third cash, one-third in one year, and one-third in two years, secured by mortgage, the deferred payments to bear six per cent. interest. It was further agreed that the building of the factory should commence within thirty days, and to be prosecuted as rapidly as practicable to its completion. There were other conditions in the contract, but as they have no binding effect upon the question here involved, it is unnecessary to recite them.

These two contracts are made exhibits to the complaint, and form the foundation of the action. The complaint is very lengthy, but the question that is presented for our consideration may be briefly stated as follows: The complaint avers that the appellant has performed all the conditions on its part, as af-

fected by the said contracts; that said real estate was platted into lots, and that the appellee became a subscriber under the first contract mentioned, to purchase one of said lots at and for the price of $200.00; that after said lands had been platted into lots, the appellee and nearly all of the subscribers for lots met at a time and place agreed upon, for the purpose of agreeing upon a plan for the selection of the lots so agreed by them to be taken, and that said meeting was organized by the selection of a president and secretary; and that it was agreed that strips of paper, each slip bearing the name of one subscriber, should be placed in a receptacle, and the same drawn out by a committee, which was then appointed for that purpose, the name of the subscriber first drawn to have the first choice of lots, and so on in the order of each name drawn.    That thereupon the secretary of said meeting prepared the necessary papers and said drawing was had; that the seventy-ninth name so drawn was the name of the appellee, which indicated the figure 79 opposite his name was the seventy-ninth choice; that the proceedings of said meeting were reduced to writing, and that after said drawing was completed, all the subscribers participating therein, adjourned to reassemble at such platted ground for the purpose of selecting their lots in accordance with said drawing; that in pursuance therewith, the appellee made the seventy-ninth choice in accordance with said drawing, and selected lot number 25 in said addition, and that observing the number upon the stake thereon, selected and took possession of the same as his choice, and then and there announced and reported to the party who was keeping the record, and with such announcement being made by the appellee, it was so entered opposite his name; that he then selected and took possession of said lot.

The complaint further avers that the lots so drawn were of unequal values, and that when appellee selected said lot number 25, it was withdrawn from the distribution and set apart to him and the remaining subscribers were required to and did make their choice and selection from the other lots which remained, and that thereafter neither the appellant nor its grantors had or exercised or claimed any possession or dominion over said lot. The complaint then contains the following averment: "Which possession was so taken under and pursuant to such contract and with the knowledge and consent of plaintiff. In making said selection of lots by said drawing, plaintiff neither participated therein nor counseled nor advised the same in any way."

The complaint further avers that there was a mortgage upon the real estate which appellant platted into lots, and which were disposed of as aforesaid; that said mortgage was to secure the payment of two notes of $900.00, due in one and two years; that it was stipulated in said mortgage that when any of the said lots were sold the mortgage should be released as to the lots so sold, on payment to the mortgagees an amount equal to the proportion borne by one-fifth of an acre to the amount of said mortgage remaining unpaid; that before the commencement of this suit, appellant tendered to appellee a deed, with covenants of warranty, and demanded of him payment and settlement by notes according to said contract, which he refused. It further appears from the complaint that at the time of the making of the said two contracts the Washington Glass Company was a copartnership, and that before the commencement of this action it was duly incorporated under the laws of this State; that all the rights, assets and franchises of said firm were, upon the creation of said corporation, transferred to

it. The Washington Glass Company partnership and the individual members thereof were made parties defendant, and each of them filed a disclaimer. The trial court sustained appellee's demurrer to the complaint, and such ruling is assigned as error. Counsel for appellee have raised and discussed three questions: (1) That the contract between the Ciecro Improvement Company and the appellee and others, is in parol, and therefore within the statute of frauds; (2) that appellant cannot recover in this action of appellee, the value of the lot, because the scheme devised for the distribution or choice of lots was tainted with the vice of a lottery; (3) that the complaint shows that at the time of the tender of the deed to appellee, the lot selected by him was incumbered by a mortgage, and he was not bound to accept a conveyance with such incumbrance.

Appellant and appellee both treat the contract between the Cicero Improvement Company and the appellee as being within the statute of frauds, but appellant contends that it is taken out of the statute by part performance, in that appellee took possession of the lot. It is upon this theory that both appellant and appellee discuss the question. With all due deference to counsel and the learned judge who tried the case below, we are unable to see, under the facts pleaded, how the statute of frauds is applicable. It is not an action to enforce a parol contract for the sale of real estate, nor for specific performance, but to enforce the collection of the purchase price of real estate. So far as applicable here, the statute of frauds is as follows: "When contracts must be in writing. 1. No action shall be brought in any of the following cases: Fourth. Upon any contract for the sale of lands." Section 6629, Burns' R. S. 1894, (4904, Horner's R. S. 1897).

.If appellee was suing appellant upon the contract and demanding that it convey to him the lot for which he subscribed, we would have a different question presented, and the appellant might possibly invoke the provisions of the statute we have just quoted to defeat the action, but upon the complaint, as presented to us by the record, it has not, in our judgment, any application. We must therefore treat the contract set out in the complaint, as a parol contract for the sale of real estate, and this proceeding as an action to collect the purchase money. The appellant by its complaint avers and shows a readiness and willingness on its part to carry out its part of the contract and convey the real estate to the purchaser. The question now before us has been settled in this State by the Supreme Court, and is no longer open to doubt. *Schierman* v. *Beckett*, 88 Ind. 52. Appellee Beckett sold to Martin Schierman, by parol contract, certain real estate in this State, and said Schierman executed to Beckett his promissory note for a part of the purchase price, and the suit was upon such note. Beckett showed a willingness and ability to carry out the contract, by conveyance and otherwise, and recovered the amount due. At the time the note was executed the following receipt was given: Aurora, Ind., Feb. 16, 1881. Received of Martin Schierman his note for the sum of $200.00 as an advance payment of his purchase of the e. ½ of the n. w. ¼ of sec. 11, town. 5, r. 3 w.; also, south ½ of s. w. ¼ of sec. 2, town. 5, r. 3 w.; also lands adjoining; making the whole aggregate 153 acres, this day sold to him by Fletcher & Co., agents for Joe S. Beckett, the purchase price being $35.00 per acre, on the following terms: one half cash, and the balance in annual payments, at six per cent. interest, the said Martin Schierman to receive a clear warranty deed upon compliance with above

terms.  The deed to be delivered by March 15, 1881. [Signed.] Fletcher & Co."

It was contended that the transaction amounted merely to a parol contract for the sale of land, and that neither party to the contract being bound thereby there could be no recovery upon the note.  Black, C., in speaking for the court said:  "It has sometimes been said that if an executory contract for the conveyance of land do not bind the vendor, he cannot recover upon a note given by the vendee for purchase money; that if the vendor is not bound by his promise there is no consideration for the promise of the vendee."

We should remark in this connection, that in the case from which we have just quoted, there was an answer averring that the note sued on was given without any consideration.  Continuing, Black, C., said:  "On the other hand, it has been held that the vendor of land by parol contract, if he show his own ability and willingness to perform, can enforce the vendee's note for purchase money.  And this doctrine is placed upon the same principle that prevents the vendee from recovering back the purchase money while the vendor is able and willing to convey according to his verbal agreement.  It is said that the defense to the note in such case must be, not upon the statute of frauds, but want, or failure of consideration; which cannot be made out if the vendor show his ability and willingness to perform."

Mr. Browne in his work on the Statute of Frauds says: "The right in the vendee of land by verbal contract, to recover what money or other consideration he has paid, is clearly confined to those cases where the vendor has refused or become unable to carry out the contract, the plaintiff himself having faithfully performed or offered to perform on his part.  *  *  *

Upon the same principle that the vendee cannot recover back the purchase-money while the vendor is willing to convey, it is also held that the vendor of land can only enforce the vendee's note for purchase-money against him, when he shows his own ability and willingness to perform.    Indeed, in such an action the defense must be, not upon the Statute of Frauds, but the want or failure of consideration; and this defense cannot be made out if the plaintiff shows his ability and willingness to convey according to the bargain."    Browne on Statute of Frauds, sections 122 and 122b.    This doctrine seems to be firmly established by the authorities.    See *Rhodes' Admrs.* v. *Storr,* 7 Ala. 346; *McGowen* v. *West,* 7 Mo. 569, 38 Am. Dec. 468; *Crutchfield* v. *Donathon,* 49 Tex. 691, 30 Am. Rep. 112; *Barnes* v. *Wise,* 3 T. B. Mon. 167, 171; *Rowland* v. *Garman,* 1 J. J. Marsh 76, 19 Am. Dec. 54.

In the case at bar, the appellant, by his complaint, showed a tender of a deed before the action was brought, conveying to appellee the lot described, and also shows appellee's refusal to accept it.    Appellee, under his contract with the Cicero Improvement Company, subscribed for and agreed to take one lot in the addition platted by appellant, and agreed to pay therefor $200.00.    His refusal to accept the deed tendered him and to pay the purchase price, as provided by the contract, was a repudiation of the contract on his part, and it appearing that appellant was willing, able and ready to perform the conditions of the contract on its part, the complaint, in that regard, stated a good cause of action.

Appellee contends, in the next place, that appellant cannot recover because the scheme devised by the purchasers of, or subscribers for the distribution of the lots was tainted by the vice of a lottery, and rely

principally upon *Lynch* v. *Rosenthal*, 144 Ind. 86, in support of their contention. In the case just cited appellant had a contract for the purchase of a tract of land, which he was about to plat into lots as an addition to the city of Decatur. The appellee and others agreed severally to purchase of appellant the number of lots indicated by the number placed opposite their respective names, upon certain terms and conditions. Six of the lots were reserved, and one was marked, "To be given away." Said lots were of unequal values, varying in prices according to classes and locations. By the terms of the contract, the purchasers were to meet and determine by lot the lots awarded to each respective subscriber, and they were also to determine the manner of awarding the prize lot. When such awards were made and it was determined in whom the respective ownerships should lie, the appellant was to convey by warranty deed the lots to each of the subscribers. The facts in that case are very unlike those in the case now under consideration, and the principles there declared are therefore not applicable here. That was an action to enforce specific performance of a contract for the purchase of real estate. Appellant held a contract for the purchase of a tract of land, which he was about to plat as an addition to a city. He entered into a written contract with appellee and others, by which they subscribed for and bound themselves to take the number of lots opposite their respective names. Appellee subscribed for one lot, and by the terms of the contract, the subscribers were to meet and determine by lot the number of the lot or lots to each respective subscriber; and as soon as said lots were so awarded and it should be determined in whom the respective ownership should lie, then appellant was to make to

each of said parties a warranty deed, etc.    In pursuance of the provisions of the contract each of the subscribers, including the appellee, met and determined by lot, which of the platted lots should be designated for conveyance to each subscriber, including a described lot for appellee.    After such drawing appellant made and tendered to appellee a deed with covenants of warranty, for the lot drawn by him, and demanded payment of the purchase price, which appellee refused.    In the action for specific performance, appellee successfully defended on the sole ground that the scheme for the distribution of the lots was tainted with the vice of a lottery, and therefore the contract was not enforceable.    The Supreme Court very properly held that appellee was not liable.    Hackney, J., speaking for the court said:    "The argument is not made that contracts tainted with the vice of lottery schemes are enforceable.    That such contracts are against public policy and that those who have entered into them shall have no relief, in the courts, to enforce those that are executory or to recover that which has passed under such as have been executed, is without doubt," citing the following authorities:    Const., art. 8, section 15; *Burger* v. *Rice*, 3 Ind. 125; *Swain* v. *Bussell*, 10 Ind. 438; *Rothrock* v. *Perkinson*, 61 Ind. 39; *United States* v. *Olney*, 1 Abb. 275; *Whitney* v. *State*, 10 Ind. 404; *Crews* v. *State*, 38 Ind. 28; *Hudelson* v. *State*, 94 Ind. 426; *Riggs* v. *Adams*, 12 Ind. 199; 13 Am. and Eng. Ency. of Law, p. 1187; sections 2170, 2171, 2172, Burns' R. S. 1894 (2076, 2077, 2078, Horner's R. S. 1897).

The court further said:    "The important question here is as to the character of the present contract. Does it infringe this principle of public policy?    After a learned and exhaustive discussion of the subject, the learned judge concludes with the following lan-

guage: "We find, therefore, that both the contract and the manner of attempting to comply with its terms were against good morals, forbidden by public policy and void. *. * * It is enough to say that one who asks equity must present clean hands in which to receive it. Here the appellant, from the beginning, had unclean hands. He originated, carried forward and in this suit sought to enforce a vicious contract. He is in no position to ask that equity estop his ally from exposing the vice of that contract, the enforcement of which public morals forbid."

In the case before us there are two contracts accompanying the complaint as exhibits.

(1) A contract between the Cicero Improvement Company and appellee, and others;

(2) A contract between appellant and the Cicero Improvement Company.

These two contracts should be considered and construed together, for, in substance, they relate to the same subject-matter. In the contract first mentioned, it is recited that the Improvement Company is trying to locate at Cicero one or more factories, and as an inducement to such location, said company, or their assigns, propose to lay out and to plat into town lots certain real estate, and to encourage such location; the signers to said agreement, bound themselves to subscribe for and take the number of lots designated opposite their respective names, at a price not to exceed $200.00 per lot; said subscribers were to pay one-third the purchase price in cash, one-third in one and two years, with six per cent. interest. The contract contains the following provisions: "This agreement is made on the express conditions and understanding that one or more factories * * * shall be located in said town. (Cicero.) The lot hereby

contracted for shall be apportioned and located for each subscriber as the subscribers hereto shall agree when said lots are laid out, in proportion to amount paid for such lots by the subscriber." This contract, on the part of the subscribers is signed as follows:

"James Leach ...... 1 Lot ...... $200.00, etc."

The second contract provided that appellant was to build on certain lands, one 16 pot glass bottle factory; that it was to employ not less than 150 hands; that the weekly pay-roll should not be less than $1,500.00; that it was to lay out and plat certain lands into town lots, and that the Improvement Company was to procure the sale of 150 of said lots, such lots to be platted at not more than five to the acre including streets and alleys. The contract further provided that the purchasers were to make selection of the lots in pursuance to the contract which the subscription of such lots had been taken; that said lots were to be sold at an average price of $200.00 per lot, to be paid for, one-third cash, one-third in one and two years, secured by mortgage, the deferred payments to bear six per cent. interest.

The complaint avers full performance of all the conditions of the contract on appellant's part, and shows a tender of a deed to appellee for the lot apportioned to and selected by him.

The complaint further alleges the manner or scheme agreed upon between appellee and his co-subscribers for the apportionment, location, and selection of such lots, but charges, "That in making said selection of lots by said drawing, plaintiff neither participated therein nor counseled nor advised the same."

It is clear that neither of these contracts is tainted by the vice of a lottery scheme, and the complaint as clearly shows that appellant had no connection with the scheme devised by appellee and his co-subscribers

for the selection of the lots for which they subscribed, and further shows that appellee went into possession of the lot selected by him.

Appellant, relying in good faith, upon the terms and conditions of these contracts, proceeded to carry out their provisions on its part, by erecting its factory, investing its money on the faith of the contracts, employing men, showing that it employed over 150 men, or hands, and paid out over $1,500.00 on its weekly pay-rolls.   It had no right to assume that appellee and the other subscribers would enter into an unlawful scheme for the selection of the lots, but had a right to assume that some legitimate and lawful means would be resorted to by them for that purpose.   In any event appellant was in no way connected with such a scheme; it was not a party to it; did not counsel or advise it, and we are unable to see upon what principle of law, equity, or reason, it can be deprived from asserting its rights, on account of such unlawful acts of appellee and others.   It seems to us that if the rule should prevail for which appellee contends, that it would work great hardship and rank injustice in many instances.   Thus if A should enter into a contract with B and others, legitimate and lawful in all of its provisions, and not in any sense against public policy or good morals, and then B and others should enter into some unlawful scheme relating to such contract, with which scheme A had no connection, then, in that event, if appellee's contention should prevail, A could not enforce his rights under the contract. Such a doctrine would be monstrous and certainly cannot prevail in the administration of justice.   It is the duty of courts to administer and declare the law so as to protect the rights of all parties who apply to the courts for redress.   Here appellant has done all that it agreed to do, as appears from the complaint;

it has not been guilty of any wrong, constituting a breach of its contract; it was not in any way responsible for, or connected with the unlawful scheme of appellee and others; the contracts themselves were not tainted with any vice that would vitiate them; and from the facts stated in the complaint, the truth of which are admitted by the demurrer, the appellant has shown a right to recover.

We have examined the case of *Lynch* v. *Rosenthal*, *supra*, with very great care, and are satisfied that what we have said here does not in any sense conflict with the doctrine therein announced.

We do not think it necessary to extend this opinion by a discussion of the only remaining question which is presented, as for the reasons given the judgment must be reversed. The judgment is therefore reversed, with instructions to the court below to overrule appellee's demurrer to the complaint.