## EMSHWILER, ADMINISTRATOR, *v.* TYNER.

[No. 2,719. Filed January 4, 1899.]

CONTRACT.—*Sales of Real Estate.—Selection Made by Lot.—Lottery.—* Several persons entered into a written contract to purchase town lots at a certain fixed price per lot, the lots to be distributed among the several purchasers in such a manner as might be agreed upon by them. After the lots were platted the several purchasers and the vendor met together for the purpose of determining the manner of the dis-

tribution, and, under the direction of the vendor, the distribution
was made by lot. *Held,* that the contract was valid in its inception,
but was rendered unenforceable because the manner of the dis-
tribution, to which the vendor was a party, was tainted with the
vice of lottery. *pp. 349-353.*

PLEADING.—*Partial Answer.*—An answer which purports to be in bar
of the entire cause of action stated in the complaint, but answers
only a part thereof, is insufficient. *pp. 353, 354.*

CONTRACT.—*Valid and Illegal Consideration in Same Contract.*—
Where valid and illegal considerations in the same contract are
susceptible of division, that part of the consideration which is legal
may be enforced. *p. 354.*

From the Blackford Circuit Court. *Reversed.*

*A. M. Waltz, J. S. Dailey, Abram Simmons* and
*F. C. Dailey,* for appellant.

*Enos Cole, J. A. Hindman, Elisha Pierce* and *J.
A. Bonham,* for appellee.

WILEY, J.—The only question for review in this ap-
peal is the action of the court in overruling appellant's
demurrer to appellee's second paragraph of answer.
The decedent in his lifetime commenced the action,
but while it was pending he died, and his adminis-
trator was substituted as plaintiff below. The com-
plaint was originally in one paragraph, but after de-
cedent's death, and the substitution of his adminis-
trator, an additional paragraph of complaint was
filed. The two paragraphs are founded upon a writ-
ten contract between appellee and the decedent,
which contract is made an exhibit. It is not neces-
sary to set out the complaint in detail, but that
the pertinency of the facts averred in the third para-
graph of answer may clearly appear, it is important
that we show the material matters embraced in the
contract. The contract sued upon is signed by the de-
cedent as party of the first part, and appellee and oth-
ers, parties of the second part, and by its terms
the decedent agreed to locate a canning factory

upon certain real estate in Blackford county, Indiana. That said factory was to have a capacity of 20,000 cans per day, and was to employ 150 persons. That it was to be completed and ready for operation for the canning season of 1895, and decedent was to organize a company for conducting the business to be known as the "Blackford Canning Company." By the terms of the contract the decedent was to plat into seventy-four lots, a certain tract of land, each lot to be fifty feet wide and 120 feet long. That each of the persons signing said contract agreed by its terms to take one of said lots, and three shares of paid-up "unassessable" stock of said company of the par value of $25 each, and to pay for one of said lots and the three shares of stock $150. The contract further provided that the manner of the distribution of the lots should be determined by the purchasers, and that decedent would convey to such purchasers their respective lots, when distributed, by a deed, with covenants of warranty, and furnish each of said purchasers with an abstract of title, and issue to each of them three shares of said stock. The contract also provided that the said $150 should be paid in six equal payments of $25, each subscriber to execute his several notes for the amount, payable in three, six, nine, fifteen, and eighteen months, at six per cent. interest, said notes to be given when said company was duly organized. The complaint avers in detail all the conditions of the contract, and that decedent complied with all the conditions and stipulations to be performed by him.

The third paragraph of answer avers that in December, 1895, various subscribers to said contract and enterprise, and said decedent, met together for the purpose of determining how and in what manner the said seventy-four lots were to be awarded and dis-

tributed; that the decedent at said meeting directed that said lots be awarded and distributed by placing the numbers of the lots severally upon slips of paper, and placing said slips in a hat, and then by placing the names of the various subscribers severally upon slips of paper, and then placing them in another hat; that thereupon one of the subscribers present was to be blindfolded, and while thus blindfolded he was to draw simultaneously from the two hats a name and a number of a lot, until all the names and numbers were drawn; that in each instance the lot whose number was drawn when a name was drawn was to be awarded to the subscriber whose name was so drawn, and was to constitute the selection of the lot to be conveyed to him; that said lots were so awarded to each subscriber; that appellee was not notified to meet; that he was not present at such drawing and awarding, either in person or by agent; that he did not in any manner exercise his choice, will, or judgment in the selection of a lot, and did not participate in said drawing or in awarding said lots; that said seventy-four lots were of unequal values; that a large portion of the land so platted had been used for a brickyard; that dirt had been excavated therefrom; that huge excavations four or five feet in depth were made therein, so that said lots were mudholes, ravines, and lagoons, and were thereby rendered worthless and of no value. That some of the said lots were on high ground and worth $150, while lot number seven so awarded to appellee was of no value. The answer then avers that by reason of the facts therein stated, "said lots were of unequal value, and the manner in which said lots were distributed, including the one awarded this defendant, and by reason of the facts aforesaid, the said contract and the manner of its attempted execution was and is a

scheme of chance, and a lottery, is fraudulent and against public policy and void." It is apparent from this paragraph of answer that the pleader proceeded upon the theory that the contract, in the first instance, is void, because it is tainted with the scheme of a lottery, or chance. This court has recently passed upon this exact question, in *Washington Glass Co.* v. *Mosbaugh,* 19 Ind. App. 105, where it was held that a contract of similar tenor was not void on the ground urged, and we still adhere to such holding. But the facts in that case and those charged in the third paragraph of appellee's answer in the case now before us, are not at all similar. The contract sued upon here does not contain any provision relating to the awarding and distribution of the lots by lottery or chance, but like the case of *Washington Glass Co.* v. *Mosbaugh, supra,* leaves the manner of such distribution to be determined and agreed upon by the subscribers; and hence, under the authority of that case, the contract, in the first instance, and on its face, is enforceable. If, then, the contract as originally entered into was not subject to the objection urged by appellee, the question for us now to determine is, do the averments of the answer, descriptive of the plan and the manner of the distribution of the lots, render the enforcement of the contract against appellee void? The answer avers that various subscribers and decedent met for the purpose of determining how and in what manner the lots were to be awarded, and that the decedent, at said meeting, directed the manner of the distribution. We need not repeat the allegations of the answer, but it is sufficient to say that the plan devised by the decedent, participated in by him and the subscribers present, was a scheme tainted with the vice of lottery; in other words, it was a scheme of chance, where the will

and judgment, both of the decedent and subscribers was in no sense exercised. Appellee did not participate in the distribution, and was not present. In *Washington Glass Co.* v. *Mosbaugh, supra,* appellant was not a party to the distribution, and in the complaint in that case, it was alleged: "That in making said selection of lots by said drawing, plaintiff neither participated therein, nor counseled or advised the same." In that case, also, appellee was a party to the agreement between the subscribers, was present at and participated in the drawing of lots, and took possession of the lot apportioned to him. So that it is clear that the question to be here decided rests upon very different facts than the case to which we have just referred. The fact that appellant directed and participated in the drawing and distributing of the lots in this case, brings it, we think, within the rule announced in *Lynch* v. *Rosenthal,* 144 Ind. 86. There the contract was, in its essential features, similar to the contract here sued on. There was, however, this distinction: there the contract itself provided that the lots should be awarded by "lot" to each respective subscriber, and it was held that it could not be enforced, as being against public policy and good morals. It was there held that contracts tainted with the vice of lottery schemes are not enforceable, and it was said: "That such contracts are against public policy and that those who have entered into them shall have no relief, in the courts, to enforce those that are executory or to recover that which has passed under such as have been executed, is without doubt" citing many authorities, to which we refer. Continuing, the court said: "We find, therefore, that both the contract and the manner of attempting to comply with its terms were against public policy and void. * * * It is enough to say

that one who asks equity must present clean hands in which to receive it. Here the appellant, from the beginning, had unclean hands. He originated, carried forward and in this suit sought to enforce a vicious contract. He is in no position to ask that equity estop his ally from exposing the vice of that contract, the enforcement of which public morals forbid." This language conveys no uncertain meaning, and from it, it is plain that neither the law nor courts will lend their aid to enforce contracts tainted with the vice of a lottery, and which are against public policy, good morals and a quickened conscience.

As we have said, the contract before us, in its conception, was not subject to the infirmity of the contract in *Lynch* v. *Rosenthal, supra,* but in the manner of its execution, which was directed and participated in by appellant, it was inoculated with a like vice; and under the authorities, appellant, coming into court with unclean hands, and asking the enforcement of a contract which he himself has made obnoxious to public policy and good morals, is in no position to ask the court to enforce its execution. We are unable to distinguish the difference, in principle, between a contract void *ab initio,* and one made so, after its execution, by the very party under whose provisions he seeks to secure its benefits. It must follow from the authorities and what we have said that the third paragraph of answer, in so far as it seeks to avoid the allegations of the complaint relating to the sale and transfer of the real estate awarded to appellee, constitutes a complete bar; but said paragraph was not good as a complete defense to appellant's cause of action, and it was error to overrule the demurrer thereto.

The third paragraph of answer purports to answer

the whole complaint, when at most it is only a partial answer, and under the unvarying rule in this State, for that reason it is not good. The contract declared on binds appellee to pay appellant $150 for one lot and three shares of the stock of the Blackford Canning Company, of the par value of $25 each, so that it appears from the contract that $75 of the consideration running to appellee was three shares of said stock, valued at $25 per share. The contract binds appellant to issue and deliver to appellee said shares of stock, and the complaint avers that said shares of stock were duly issued in the name and tendered to appellee before the commencement of the action. That part of the contract by which appellee subscribed for and bound himself to pay $75 for three shares of stock in said canning company, was not vitiated by appellant's conduct and acts relating to the distribution and awarding of the lots, and may be enforced. It is the recognized law in this and other states that where valid and illegal considerations in the same contract are susceptible of division,—i. e., where the legal can be clearly distinguished from the illegal—that part of the consideration which is legal may be enforced. See *Pierce* v. *Pierce*, 17 Ind. App. 107, and authorities there cited. As the third paragraph of answer purports to answer the whole complaint, and is only a partial answer, the demurrer should have been sustained. Each paragraph of an answer must respond to the entire complaint, or to so much of the cause of action as it purports to answer; and if it purports to be in bar of the entire cause of action stated in the complaint, but answers only a part thereof, it is insufficient. *Walter A. Wood, etc., Co.* v. *Nichause*, 8 Ind. App. 502; *Dunn* v. *Barton*, 2 Ind. App. 444; *State, ex rel.,* v. *Par-*

*rish*, 1 Ind. App. 441; *Orb* v. *Coapstick*, 136 Ind. 313; *Messick* v. *Midland R. Co.*, 128 Ind. 81.

The judgment is reversed, with directions to the court below to sustain appellant's demurrer to the third paragraph of the answer, and for further proceedings not inconsistent with this opinion.